JANVIER, Judge.
On December 8, 1947, Angelo M. Bruno was the owner of a restaurant business, in New Orleans, which he listed for sale with John E. Ruiz, a real estate agent. The listing contract described the property as: “Bruno’s Rest Business & Fixtures Stock & Good Will as per inventory on reverse side card.” The price for which the property was listed was “Five Thousand net * * * all cash to vendors.” The blank space in the listing contract in which the rate of the agent’s commission is usually inserted was left blank.
The listing contract authorized the real estate agent “to accept a non-interest bearing deposit upon submission of an offer or 'an agreement to purchase from a prospective purchaser * * It contained a further statement referring to the deposit and addressed to the agent and reading as follows: “ * * * out of which deposit you may deduct your commission as above.”
The contract aso provided that should the agent be required to employ counsel to enforce the contract, the owner would pay an additional 25% as an attorney’s fee.
On December 23, 1947, Sam Serio and his wife, Minnie Serio, executed a written offer to purchase the listed property for $7,000 cash. This offer provided that the property was to be sold “subject to lease 5 yr. with 5 yr. option or 10 yr. lease.” In the written offer the property was described as follows: “The Restaurant located at 318 St. Charles Street — including all restaurant stock as exists and all fixtures owned by vendors as on reverse hereof.” On the back of the written offer appears the following:
“In connection with the contract on .the reverse hereof the fixtures as listed below are included—
Rent on deposit $600.00
Tables and chairs
Cash register
Hat and coat ráeles
Creamer
Cigarette case
Deep freeze box
About $500.00 restaurant stock, this amount variable as of time of act of sale.
Miscellaneous articles.”
*80 This offer provided that the sale should he passed before the agents notary on or before December 27, 1947.
The offer was accepted in writing by Bruno on December 24, 1947, and Sam and Minnie Serio and Bruno all signed on the reverse side on which the property was listed, as well as on the front on which were written the offer and the acceptance. Sam and Minnie Serio deposited $700 with the agent Ruiz. The sale was never consummated, and this litigation is the result.
Bruno filed suit in the Civil District Court for the Parish of Orleans praying for judgment declaring the deposit forfeited and ordering Ruiz to pay the amount thereof over to Bruno, and Bruno prayed for further judgment against Sam and Minnie Serio in the sum of $150.00 “for attorney fees for having to file suit to recover the said Seven Hundred Dollars ($700.00), and for all costs and for general relief.”
Ruiz first filed an exception of no cause of action and then an answer, in which he admitted, the essential facts alleged by Bruno, but in which he denied that Bruno was entitled to receive the deposit. Ruiz averred that the sale had not been consummated “ * * * that the reason therefor was the unwillingness of the sister of Mrs. Minnie Serio, or some other relative, to enter upon the venture with the said Mr. and Mrs. Sam Serio,” and Ruiz further averred that “the plaintiff herein declared the deposit of Mr. and Mrs. Serio ipso facto forfeited when they breached “d-2” (D-2 being the offer to purchase).
■ Ruiz then assumed the position of plaintiff in reconvention, and alleged that, under the listing contract, he was authorized to retain any amount by which the sale should' exceed $5,000, -and that this excess amounted to $2,000; that this “commission” was earned as soon as he obtained an offer which was accepted and that, therefore, he was entitled to retain t'he deposit of $700 and to obtain a further judgment against Bruno for $1300, and, in addition, that he should be awarded a further judgment against Bruno for $675 as an attorney’s fee, made necessary by the refusal of Bruno to pay his commission of $2,000.
Sam 'and Minnie Serio filed answer to Bruno’s petition in which they admitted the execution of the offer to purchase and of the acceptance thereof 'by Bruno, and they averred that they were “ready, willing and alble to carry out their obligations under the contract,” but that Bruno “was not the owner of and could not deliver all of the fixtures which he had agreed to sell to respondents as part of the business which was the subject of said agreement to sell and that he was unable to deliver to respondents a lease for five years with a five-year option or a lease for ten years of the premises in which said business was conducted * * These defendants admitted that they had deposited $700 with Ruiz as agent, and they averred that Ruiz was without right or authority to deliver the said deposit to Bruno and that the said deposit should be returned to them “by reason of the default of Angelo M. Bruno in his obligations under his contract to sell.”
Assuming the position of plaintiffs in reconvention, Sam and Minnie Serio prayed that there be judgment against plaintiff and against Ruiz, holding them to ■be entitled to the return of the $700, with legal interest thereon, etc.
The matter went to trial on these issues, and there was judgment in favor of Bruno against all three defendants declaring the deposit of $700 forfeited to Bruno', and there was judgment in favor of Bruno and against Ruiz in the sum of $700, with interest. The reconventional demands of Ruiz and of Sam and Minnie Serio were dismissed.
Ruiz has appealed suspensively and Sam and Minnie Serio have appealed devolu-tively.
In this Court Sam and Minnie Serio filed exceptions of no right of action and no cause of action, and their .counsel argue that these exceptions should be maintained for either of two reasons. First, they say that the contract under which Bruno agreed to sell and the Serios agreed to buy does not satisfy the codal requirements of a *81 contract because it does not, with definiteness and certainty, describe the property which was to be sold. They say, for instance, that there was set forth on the reverse of the contract “tables and chairs”, no number or description being given. And they say, too, that the contract provided that the sale would be made “subject to lease 5 yr. with 5 yr. option or 10 yr. lease,” and that here again there was indefiniteness since “no rental is shown— the parties thereto are not mentioned.”
'Counsel say, too, that the contract is vague or ambiguous for the reason that it provides for a commission for the agent “as per listing contract” although the listing contract does not expressly provide for a commission.
The second ground on which we are urged to maintain the exception is that it is neither alleged nor shown that Bruno ever formally made tender of the property to Sam and Minnie Serio.
We first consider the second ground— that the prospective purchasers were never formally put in default.
It is evident from the record that no formal tender was made by Bruno to the Serios, but it is very clear from the record that the Serios were entirely unwilling to consummate the contract and indicated clearly that they would not’ take title to the property and would not pay for it.
It is made clear that although it was agreed that the act of sale was to be executed on December 27, the parties met prior to that day and found that they could not agree as to what was to be transferred by Bruno to th'e Serios. The record clearly shows that there were in the restaurant certain furniture and restaurant equipment which did not belong to Bruno but to Gian-grosso, the owner of the building — for instance, certain chairs and tables. -.But counsel for Bruno call attention to the fact that in the agreement to sell, it was not provided that all of the furniture and fixtures should be transferred, but only such as were “owned by vendors.!’
The Serio.s vehemently declare that they; did not know that certain tables and chairs were not included, but the record convinces,us that both Sam and Minnie Serio knew just what was intended to be included in the sale. Although, in their answer, the Serios aver that Bruno co-uld not deliver the lease from the owner of the building, here again the record malees it certain that the owner of the building was at all times ready and willing to give to the Serios a lease such as all parties understood was contemplated by the agreement. The truth of the matter is that it is made very certain that the Serios were attempting in every way possible to avoid compliance with their agreement to purchase.
It is made clear by the record that when the parties met on Christmas Eve to discuss their differences, they could not reach an agreement and they apparently agreed to adjourn and to make a later attempt to reach an agreement. Thus, by mutual consent they postponed the time for the passing of the; act of sale...
There is a conflict in the evidence as to whether the second meeting- was on December 27, the day fixed for the execution of the act, or on January 7, but it is certain that they met on a day subsequent to that on which they had the first meeting ’ -and ’ they met by agreement, and at this second meeting it was apparent that they could not agree, -and that the Serios would not consummate the purchase. But, as we -have said, the record also shows clearly that this was due to the refusal of the Serios to complete the purchase for it is made certain that Bruno was ready and willing to transfer to the Serios everything which the’ parties really understood was covered by the agreement to sell.
Our reasons for saying this are based on the actions of the Serios commencing almost immediately after they executed the offer to buy the property. Serio had been in the restaurant business for several years and Mrs. Serio also was very familiar with the restaurant business, and they admit that they knew that some of the articles, which they .saw when they visited the- place, were not to be included. • And -yet they, immediately began making claims for various articles which the evidence shows clearly they knew were -not-part, of the property.owned by B-runo. . •
*82 There can he no doubt at all that no typewriter was included and yet the Serios, finding themselves unable to sustain their claims as to other articles, made claim for a typewriter. At first the Serios made no claim that they could not obtain a lease from the owner of the building, and yet when everything else seems to have failed, they vehemently contended that it was impossible for them to obtain a lease from the owner on the terms which they had understood they would have to meet.
As a matter of fact, our conclusion is that the situation was just as it was described by Mr. Piazza when he said that when he left the second conference, he clearly understood “that Mr. Serio didn’t want to go through with this transaction.” Mr. Piazza states that at the first conference Serio “made no objection except that he wanted the typewriter.” He added that at the second conference, “in the office of Mr. Dreyfous * * *, his demands became enlarged; he wanted other things.” That is exactly the conclusion we reach from a reading of the record.
It is true that there is jurisprudence to the effect that where real estate is involved, the vendor may not declare forfeited the deposit made 'by the vendee without putting the vendee formally in default. There must be a tender. And where real estate is involved, it is settled that there cannot be a verbal extension of the time fixed in the contract for the consummation of the sale. Di Cristina v. Weiser, 215 La. 1115, 42 So.2d 868. See, also, Nettles v. Vignes, La.App., 49 So.2d 371. But, as we have already said, there was only movable property involved here, and by mutual consent the parties apparently postponed the time for the final transfer and then the prospective vendees, without just cause, definitely refused to consummate the transaction. No tender was necessary.
We next consider the question of whether the contract was so vague or so ambiguous that it was unenforceable, and we think that the answer to the argument made by counsel for the Serios on this point is answered by certain of their own statements made in their original brief. In that brief they refer to these uncertainties in the description of the furniture and in the identification of the “leasehold”, and they themselves ask the question: “Does the alleged ‘agreement’ on its face satisfy the codal requirements of a commutative contract?” And they answer their own question as follows: “The principal object of the agreement was a restaurant business including all restaurant stock, fixtures which the agreement attempted to describe, and a leasehold of the property 318 St. Charles Street. The description of the leasehold was vague but is susceptible to being identified by extrinsic evidence. The same is true of the stock and fixtures. The provisions of the contract in regard to the payment of a commission to Ruiz are likewise vague but reference is made to a listing contract. The answer to the first question should therefore be: Yes, provided that the lease referred to can be identified; provided that the stock and fixtures can be identified; and provided that the listing contract can be produced and identified.”
That is exactly the answer we ourselves make to these contentions.
The record shows that the parties well understood just what property was included and just what lease was to be transferred.
We conclude, therefore, that on neither of the grounds argued should the exceptions be maintained.
We think that we have already sufficiently discussed the facts which are involved in the contention of the Serios that Bruno could not deliver the property which was contemplated by the contract.
We again say that the record leaves no doubt at all that Bruno could and was willing to deliver everything that was contemplated by the contract and that the failure of consummation resulted solely from the unwillingness of the Serios to take title and to pay the price.
There remains for consideration the question of whether Ruiz, the agent, is entitled to receive from Bruno a commission, and if so, how much that commission should be, and whether the deposit, which *83 is in the possession of Ruiz, may be retained by ‘him as part payment of that commission.
It is the contention of Ruiz that, under the listing contract, he was to receive as a commission any excess over the $5,000 for which Bruno was willing to sell the property, and that when he obtained a purchaser who was willing to pay a price of $7,000 and this was accepted by Bruno, his commission of $2,000 was earned, and that he is entitled to receive that amount from Bruno, regardless of whether or not Bruno was not responsible for the failure of consummation of the contract.
The question of his right to recover is complicated by the fact that the listing contract did not provide for a commission on the usual basis of a percentage of the amount of the sale price. It is made clear by the record that the reason no commission on a percentage basis Was provided for was that Bruno agreed to accept $5,000 net for his property, with the understanding that should Ruiz obtain a purchaser willing to pay a price in excess of $5,000, the excess should go to Ruiz.
The question is further complicated by the fact that, although the listing contract did not provide for a commission, it did contain a provision that the commission might be deducted by the agent from 'any deposit which he might receive.
Whether an agent is entitled to retain any part of such deposit where the contract fails of consummation through the fault of the vendee secured by the agent is considered and discussed by the Supreme Court in Southport Mill v. Friedrichs, 171 La. 786, 132 So. 346, 349, in which the facts were very similar to those found here. There on agent received a deposit of $10,000 from a prospective purchaser, but the sale was not consummated because of fault of the prospective purchaser. The agent contended that he could retain his commission out of the deposit. The Supreme Court, referring to the agent, said: “ * * * His contract did not entitle him to share in the deposit or forfeit of earnest money, but only to a commission, and only on the conditions stipulated in the contract, which conditions were not fulfilled.”
It is true that in the case at bar there is the stipulation to which we have already referred which provides that the agent may deduct his commission from the deposit, and, so far as we can ascertain, there was no such stipulation in the contract which was under consideration in the Southport Mill case.
But as we read the decision of the Supreme Court, it is founded on the opinion that where the contract is not consummated through fault of the purchaser Who was produced by the agent and earnest money is forfeited, no commission is earned. If no commission is earned, we fail to see how a commission can be deducted from the deposit. It may be argued that under such circumstances the owner unjustly enriches ‘himself at the expense of the agent, for the reason that the owner is entitled to receive the entire deposit without giving up anything whatever. But, as a matter of fact, during the time which may have elapsed while the property was out of commerce, it is possible that the owner may have lost some other prospect. The earnest money which he received as a forfeit is received by him to compensate 'him for any such 'possible loss. It is not a part of the purchase price, and, since the owner has received no purchase price for his property, it cannot be said that the 'agent has earned a commission, which is based on the purchase price.
We have not overlooked our own decision in Jourdan v. Jones, La.App., 33 So.2d 416. There, it is true, the deposit of the prospective purchaser was forfeited and the agent’s commission was paid out of the deposit, but there was no contention there by the vendor that the agent was not entitled to a commission. In fact, when the vendee failed, (because of his fault, to take title to the property, the owner of the property brought suit against the vendee and the agent who was in possession of the deposit, and the owner alleged that he was •entitled to the balance remaining out of the deposit after deducting the commission of the agent. He did not make any con *84 tention that the agent was not entitled to his commission.
We conclude that the sale of the property which was involved here was not consummated solely hy reason of the fault of the prospective vendees, and we further conclude that the agent, who is in possession of the deposit, is entitled to no part of that deposit, nor to a judgment against •the prospective vendor.
Accordingly the judgment appealed from is affirmed at the cost of appellants.
Affirmed.