favor of interveners. The judgment should be reversed.

For these reasons, the judgment appealed from is annulled and set aside, and judgment is now rendered rejecting said interventions and dissolving said writs of injunction, the interveners to pay the costs of their interventions in both courts.

ST. PAUL, BRUNOT, and THOMPSON, JJ., dissent.

(117 So. 449)

No. 28890.

OWENS v. MUSLOW.

April 7, 1928. Rehearing Denied June 4, 1928.

Frank J. Looney and Robert A. Hunter, both of Shreveport, for appellant.

Thigpen, Herold, Lee & Cousin, of Shreveport, for appellee.

ST. PAUL, J. On December 12, 1919, plaintiff and defendant entered into an option agreement whereby plaintiff paid for said option $50,000 cash and $100,000 on December 23d, and defendant bound himself to deliver to plaintiff a deed to certain oil properties for the agreed price of $1,300,000 less the $150,000 paid, provided that plaintiff should furnish defendant, on or before January 15, 1920, security or guaranty *satisfactory to defendant* for the payment to defendant of $1,150,000 on January 15, 1922, with interest at 5 per cent. per annum, payable annually.

## I.

It is virtually admitted and certainly proved that in said agreement plaintiff was not acting for himself but for Dominion Oil Company, of which he was vice president.

On January 12, 1920, three days before the expiration of said option, the Dominion Oil Company, through its president, in the presence of plaintiff, declined to avail itself of said option and abandoned the same; no claim being then made, or even suggested, by said company or by plaintiff, that the $150,-000 paid for said option should be returned.

## II.

On January 12, 1925, exactly five years after said option had been declined and abandoned as above said, plaintiff brought suit for the return of said option money, on the ground that same had been paid in error, and without consideration, upon a contract which was void ab initio since there was no mutuality of obligation; the defendant not being bound to deed the property to plaintiff unless *satisfied* with the security which plaintiff might tender him; in other words, that the obligation of defendant to deed the property to plaintiff, depended solely on his own will.

## III.

■ A so-called *contract* which leaves one of the parties free to perform or not to perform his part thereof at his mere will or pleasure is, on the very face of it, no contract at all. It is, however, capable of ripening into a contract. Thus, if the party not bound does nevertheless perform his part thereof the other party can thereupon no longer recede from his own obligation. 13 Corp. Jur. 335, verbo "Contracts," § 182. Thus, when the buyer has reserved to himself the view and trial of the object sold, the seller is bound to deliver it if the buyer declare himself satisfied and tender the price agreed upon. R. C. C. arts. 2460, 2043.

Such a *contract* therefore does produce a certain nexus or legal bond between the parties, imperfect at first, but nevertheless capable of becoming perfect by the mere act of one of the parties without further agreement.

■ Hence when our Civil Code says, articles 2034, 2024, the every obligation is *null* that has been contracted on a potestative condition on the part of him who binds himself (a potestative condition being one which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder), the meaning is that such an obligation is *voidable* if the nullity be set up seasonably, precisely as when the Code says, article 2452, that the sale of a thing belonging to another is *null*. See 2 Hennen Digest, p. 1325 (c) 1 Cf. R. C. C. art. 3293.

So that, had defendant offered to accept any security which plaintiff might tender him, or even waive all security whatever and accept plaintiff's mere personal obligation for the price, there can be no doubt that plaintiff would not then have been heard to repudiate the contract and declare that he had never been bound at all and hence was entitled to the return of what he had previously paid.

■ But, as said at the beginning, the Dominion Oil Company, for whom plaintiff was acting, made no effort whatever to acquire the properties at the price stipulated, but, on the contrary, declined to avail themselves of the opportunity; their position being that the properties were not worth nearly the amount to be paid, in which they were correct, as the event shows that defendant ultimately got for them less than half of that sum. And thus defendant was neither asked nor given any opportunity to accept or reject or waive any security they might offer. It was they, therefore, and not the defendant, who made impossible the performance of the condition on which they were to be bound, because,

until they offered security of some sort, defendant could not be satisfied or dissatisfied therewith. And they, having thus refused to go further with the option, cannot now complain that defendant *might* have refused to go on.

## IV.

■ A *harsh* contract and a *void* contract are two different things. One who engages to do a thing to the satisfaction of another may or may not have taken a harsh contract; that depending on the honesty and amenability to reason of the person with whom he contracts. But, harsh or not harsh, it is a contract, and he is bound to essay performance thereof, and the other party is bound to permit him to essay it. 13 Corp. Jur. 679, note 44 (a). Cf. Steppach v. S. E. Worms & Co., 7 Orleans App. 214.

Now the contract before us may have been a harsh one for plaintiff, but it was not a mere nudum pactum. For it did put certain obligations on defendant.

First of all it imposed on defendant at least a *natural* obligation, "binding in conscience and according to natural justice (R. C. C. art. 1757, No. 2)," to consider honestly the security which plaintiff might offer him and to accept that security if unquestionably sufficient to secure his debt, under pain of forfeiture of his good name, which every man pledges for the performance of those obligations which bind him in conscience. And we think further that defendant, *having received a valuable consideration* for the option, would have been legally bound to accept any security with which a reasonable man ought to have been satisfied. Cf. Folliard v. Wallace, 2 Johns. (N. Y.) 395. In this respect this case is distinguishable from Framerican I. D. Corporation v. Specht (C. C. A.) 297 F. 858, and Mc-Grath v. Brown, 66 Barb. (N. Y.) 481.

Secondly, the defendant was clearly under obligation to hold the property for plaintiff until the expiration of the delay given plain-

tiff to offer security for the price, under pain not only of having to return the option money received by him, but also of answering in damages for the losses which plaintiff might sustain by his breach of his obligation to hold the property for plaintiff. For in that case he would have made it vain and *impossible* for plaintiff to perform the requisite condition and thus have dispensed with it. R. C. C. art. 2040.

Finally defendant was certainly obligated to accept the full price in *cash*, if unwilling to accept such security as plaintiff might or could offer him. For in matters of *sale* the stipulation for a delay in which to pay the price is all but conclusively presumed to be exclusively in the interest of the purchaser. Nancy, Aug. 5, 1871, Journal du Palais, 1871, p. 535. Cf. R. C. C. art. 2053.

## V.

Now it would make no difference in this case whether defendant was obliged to accept the price thus tendered him without interest, or would have been entitled to insist upon the interest also; for in the latter case it would only emphasize the fact that the contract was a very harsh one for plaintiff, but that was his concern alone if the contract was otherwise valid. Hence it is not necessary for us to decide anything upon that phase of the question.

Suffice it then to say that the fact that all the French authorities seem to agree that in loans on interest the delay for the repayment of the loan is considered to have been stipulated in favor of the lender as well as of the borrower, has no bearing here. In the case of a loan on interest, the lender is presumed to have intended *an investment,* where the principal motive for making the loan would be to gain the interest; whereas in the case of a sale the principal motive would be to receive the price, the matter of interest on deferred payments being only secondary. Cf.

Trib. Fed. Suisse, March 1, 1890, Journal du Palais, 1891, 2; 1 (Dalloz 1892, 2, 169; Sirey 1891, 4, 1), with Nancy, August 5, 1871, supra. Cf. R. C. C. art. 2053.

But even as to loans on interest the sole advantage which the lender derived from the inability of the borrower to anticipate the payment is the interest which he is to receive. Hence, where it is to the manifest advantage of the lender to receive the payment in advance (say, with all interest to maturity), he has no right to resist the anticipated payment. Bordeaux, August 21, 1877, approved on this point by Cassation, July 29, 1879, Journal Du Palais 1880, 245.

### VI.

As to the suggestion that plaintiff, on the same day on which the option was abandoned by the Dominion Oil Company, offered in some way to take the property for himself, we do not think the evidence supports it, and the long silence between that date and the date of the filing of this suit tends to negative any serious effort in that direction.

The judgment below was for defendant, and we think it correct.

### Decree.

The judgment appealed from is therefore affirmed.