76 So.2d 753 (1955)
Milton J. HANSMAN
v.
UDDO & TAORMINA COMPANY et al.
No. 20442.
Court of Appeal of Louisiana, Orleans.
January 3, 1955.
Rehearing Denied January 17, 1955.
*754 Baldwin, Haspel & Molony and Conrad Meyer III, New Orleans, for plaintiff and appellee.
Joseph V. Bologna, New Orleans, for defendants and appellants.
McBRIDE, Judge.
This is an action brought by plaintiff, an advertising agent, against his former client, Uddo & Taormina Company (sometimes hereafter called defendant), and its component partners, for the sum of $513.54, and from the judgment in favor of plaintiff and against defendants, in solido, for $442.89, the defendants have appealed. In answering the appeal, plaintiff prays that the judgment be increased to $513.54, which is the amount prayed for by him in his petition.
It is not disputed that plaintiff is the owner of the claim against defendants as he is the successor of Hansman-Joslyn Advertising Agency, a partnership of which plaintiff was a member and which has been dissolved.
The petition alleges that about May 20, 1952, Hansman-Joslyn Advertising Agency, to the knowledge of defendant, which is in the business of processing food under the trade name "Progresso," executed a certain contract on its behalf with Radio Station WBOK, owned by a corporation known as WBOK, Inc.; that during January, 1953, defendant cancelled the contract with the radio station, and as a result of the cancellation before the expiration of the one-year term for which the contract had been executed, defendant became obligated to pay the "short rate" for the number of radio programs actually used in advertising its products; that the defendant refused to make payment on the short rate basis and that in accordance with the contract and the custom and practice of the advertising business, plaintiff, as successor to Hansman-Joslyn Advertising Agency, was forced to pay the bill to the radio station; that the amount thereof was $471, and in making payment plaintiff deducted from that amount his commission of fifteen percent, or $70.65, remitting to the radio station a net sum of $400.35; that defendant has adopted the position that it does not owe plaintiff the $471.
The petition further alleges that during January, 1953, plaintiff at the request of the defendant prepared for its account certain art work in connection with an advertisement which was to appear in Brides' Magazine; that this art work was approved and accepted by defendant and the advertisement actually appeared in said magazine; that plaintiff expended $75 to have the art work done and is entitled to recover from defendant that sum which it has without reason refused to pay.
The answer admits the contract with the radio station. Defendant also admits that it paid for certain radio advertising, but it denies further indebtedness to plaintiff. In the alternative, it is pleaded that Uddo & Taormina Company was not properly represented by plaintiff in that the contract between the advertising agency and the radio station was lacking in mutuality "and is one-sided in favor of the Radio Broadcaster."
The record reflects that during May, 1952, a conference or conferences took place between Salvador Uddo and Frank Uddo, representing the defendant on the one hand, and plaintiff and his former partner, Joslyn, on the other hand, regarding certain radio advertising which the partnership desired. Upon the Messrs. Uddo stating *755 that they wanted to expend as little money as possible, plaintiff explained to them that the easiest way to save money was to allow Hansman-Joslyn Advertising Agency to "buy" a one-year contract with Radio Station WBOK, for the reason that the rate under a contract for one year would be considerably lower than if the contract was made for a lesser term. The Messrs. Uddo accepted the suggestion, and accordingly on May 20, 1952, Hansman-Joslyn Advertising Agency, pursuant to the understanding with defendant, entered into a written contract with the radio station, under which the broadcaster agreed to furnish the facilities of its station to broadcast for defendant 312 programs of 15 minutes' duration each, 6 times each week, commencing June 2, 1952. The contract contained the proviso that the advertiser would pay for such service at a rate based on "Card No. 2" on usage of 312 quarter hours within the one-year period counting from the date of signing of the contract. It was further stipulated the weekly rate would be $81. Provision was made for the payment of a commission to Hansman-Joslyn Advertising Agency of fifteen percent which was to be deducted from the amount paid by the advertiser to the radio station.
The record shows that after the defendant had utilized and paid for 157 fifteen-minute programs broadcast by Station WBOK, upon the instructions of Uddo & Taormina Company the contract with the broadcasting company was cancelled.
Thereupon WBOK, Inc., sent its bill to plaintiff as successor to Hansman-Joslyn Advertising Agency for $471, which is the aggregate of an additional $3 for each of the 157 programs which had been broadcast, the radio station justifying its bill under a short rate agreement which is stipulated for in the contract and which reads as follows:
"* * * If advertiser so terminates this contract it will pay Broadcaster according to Broadcaster's published rates in effect at the date of this contract for the lesser number of periods, for all services previously rendered by Broadcaster. * * *"
There is in evidence a copy of Card No. 2 referred to in the contract, which shows that for 312 quarter-hour programs during the period of a year the rate would be $12 each; the card further shows that for not less than 156 nor more than 208 quarter-hour programs the base rate per program would be $15.
Upon receiving the radio station's bill for $471, plaintiff transmitted his own bill for that amount to Uddo & Taormina Company, but defendant vehemently disclaimed any liability for the additional charge for the programs which had already been broadcast. Plaintiff endeavored to explain the nature of and how the short rate operated, but the defendant persisted in its refusal to pay the bill. Learning of the disposition and attitude of the advertiser, WBOK, Inc., then made demand upon plaintiff for payment of the bill, whereupon plaintiff remitted to the radio station the amount of the bill less his fifteen percent commission. Plaintiff testified that he not only paid the bill in order to avoid being sued by the radio station and cast for court costs and twenty percent attorney's fees, but also to keep inviolate his credit with the radio stations in New Orleans.
The evidence convinces us that in contracts made with any kind of advertising media, whether they be radio stations, newspapers, magazines, etc., there is invariably provided therein a short rate cancellation, that is to say, the advertiser contracts to use the media for a stated length of time at a certain rate, but if the advertiser sees fit to cancel the contract prematurely, then he is obligated to pay the rate which would be applicable had the contract in the first place been for the number of advertisements actually used.
Mr. Salvador Uddo at the time of the trial was absent from the State and, of *756 course, did not appear as a witness. However, Mr. Frank Uddo testified and emphatically denied that he knew anything about a short rate applying to the radio contract. We do not believe that the witness was entirely ignorant that such provision was part of the contract which had been made on behalf of his firm with WBOK, Inc., for on cross-examination his testimony is that he was "aware in general terms" of the short rate provisions applying in advertising contracts "but it didn't strike" his mind at the time of the discussion with plaintiff and his former partner. It also appears that Uddo & Taormina Company must of a certainty have known of the short rate provisions, because it was shown that prior to the cancellation of WBOK's contract, Uddo & Taormina Company cancelled before termination a contract it had with Transportation Advertising Company and was called upon to pay and did pay a short rate on the services actually used.
Under the circumstances as the record reflects them, we have no doubt that the officials of defendant well knew or should have known that when it cancelled the radio contract before the one year had expired, that there would be a short rate charge which it would have to pay. Therefore, the defendants are liable for $471, which is the additional amount charged by the radio station under the short rate provisions of the contract. It is true that plaintiff only paid $400.35 to the radio station, but under the agreement between plaintiff, the defendant, and the radio broadcaster, and according to the custom prevailing in the advertising field as well, plaintiff was entitled to deduct from any payment made by the advertiser to the radio station a commission of fifteen percent of all charges made.
The defendants have devoted a goodly portion of their argument and brief to the contention that the contract was null and void on its face, for the reason that it contained other provisions which counsel contends amount to a potestative condition. We do not think defendant may urge such defense for the simple reason that the contract was partially performed by the respective parties. LSA-C.C. art. 2034 does provide that every obligation is null that has been contracted on a potestative condition on the part of him who binds himself, but this means that such an obligation is voidable if the nullity be set up seasonably and not after the contract has been performed. Owens v. Muslow, 166 La. 423, 117 So. 449.
We do not see how it can be said that plaintiff is not entitled to recover the sum of $75 for the art work in connection with the advertising display in Brides' Magazine. The story behind plaintiff's furnishing the art work is that he was requested by defendant, which had been an advertiser in the magazine for some time, to prepare new art work as defendant was dissatisfied with the cuts which had theretofore appeared in the magazine and which had been prepared by its publisher. Plaintiff himself employed an artist who charged plaintiff $75 for his services in preparing the art work. This was a valuable service rendered to defendant as it is shown that the defendant was entirely satisfied with what had been done by plaintiff and utilized the new cuts in future advertising in the said magazine.
Plaintiff admits that the defendants are entitled to a credit of $32.46 on their indebtedness, so we will take this into consideration when rendering the decree.
Therefore, for the reasons assigned, the judgment appealed from is increased to the sum of $513.54, and as thus amended and in all other respects it will be affirmed.
Amended and affirmed.
JANVIER, J., takes no part.