LOTTINGER, Judge.
This is a suit involving a claim for a real estate commission.
In the early part of September, 1963, Mr. Hoyt C. Newman, one of the defendants herein, contacted Mrs. Gloria Gelpi, a licensed real estate agent and an employee of the firm of Maher & Sharkey, Inc., a real estate agency, and requested that she furnish him with some information relative to a house .which he was interested in purchasing. Mrs. Gelpi was quite familiar with the house by reason of the fact that it was located in close proximity to her own home, and when she told Mr. Newman about the house and the price that the owner was asking for it, Mr. Newman said that he was no longer interested. In the course of their conversation, Mrs. Gelpi mentioned to Mr. Newman that she knew of another house located at 1308 Sherwood Forest Boulevard in Baton Rouge, that was for sale and that she thought might suit Mr. Newman’s requirements both as to size and purchase price. Mr. Newman then asked Mrs. Gelpi to obtain all of the necessary information on this property, such as the name of the owner, the size of the lot, the square footage in the house, etc. After Mrs. Gelpi had in fact obtained this information as had been requested, she informed Mr. Newman of this fact, and he asked her to show him the house. She obtained the key and showed him the house on several occasions. *164 On or about September 11, 1963, Mrs. Gelpi and Mr. Newman again discussed the house and Mr. Newman expressed a desire to make an offer to the owner of the property to purchase the property for the sum of $30,100.00. At that time he signed a purchase agreement which is contained in the record.
Mrs. Gelpi then called Mr. Bares, who was assistant secretary and general counsel for Val-U Investment Corporation, the owner of the house, and informed him that she had obtained a purchase agreement from a client with reference to the property and requested that she be permitted to list the property. Mr. Bares asked Mrs. Gelpi over the telephone if the offer being submitted was in excess of $30,000.00 and after having been told that it was, Mr. Bares then agreed to permit her to list the property. She then informed Mr. Bares as to the name of the prospective purchaser and requested from Mr. Bares and obtained from him a telegram dated September 14, 1963, which read as follows, to-wit:
“This is to authorize the real estate firm of Mayer and Sharkley, Baton Rouge, La., represented by Mrs. William J. Gelpy, to negotiate sale of property and improvements at 1308 Sherwood Forest Boulevard, Baton Rouge, to Hoyt C. Newman. Sales price to be agreed upon by Val-U Investment Corp
Val-U Investment Corp. by A. R. Bares Assistant Secretary and General Counsel.”
On September 15, 1963, at the request of Mr. Newman, Mrs. Gelpi and Mr. Maher went to the premises at 1308 Sherwood Forest Boulevard in Baton Rouge in order to discuss further Mr. Newman’s proposed acquisition of the property. After a considerable delay, during which Mr. Newman’s wife requested that Mrs. Gelpi and Mr. Maher not identify themselves to the other persons who were in the house at the time with Mr. Newman, Mrs. Gelpi and Mr. Maher eventually met with Mr. and Mrs. Newman at another house several blocks down the street. At this time Mrs. Gelpi informed Mr. Newman that she proposed to go to Lafayette the following day to discuss the proposed acquisition with Val-U Investment. Mr. Newman expressed a strong desire to accompany Mrs. Gelpi, and on the following day Mrs. Gelpi did in fact visit Mr. Bares and discuss the offer with him. Mr. Bares informed Mrs. Gelpi that Mr. Smith, the President of the corporation, was out of town, and that no action could 'be -taken"on1 the- offer until such time as he returned and passed upon it. Several hours later Mrs. Gelpi talked with Mr. Smith on the telephone, and he told her that he would be in Baton Rouge later to discuss the offer with her. The record indicates that Mrs. Gelpi was in fact never contacted by Mr. Smith with reference to the offer.
On September 18, Mr. Newman asked Mrs. Gelpi to meet him at the house on Sherwood Forest Boulevard, and at that meeting offered to pay Mrs. Gelpi some cash consideration for the services which she had rendered up to that point, and expressed a desire to deal directly with Val-U Investment with reference to the subject property. Mrs. Gelpi informed Mr. Newman that the fee that she would charge would be that set forth in the purchase agreement, six per cent of the sale price, and she further informed him that Maher & Sharkey would not permit a release without payment of the fee in the event that Mr. Newman wanted to buy the house. The evidence indicates that Mr. Newman thereupon became upset and .left the premises.
On September 23, Mr. Newman called Maher & Sharkey’s office, spoke with Mrs. Gelpi, and requested that the check which he had given to the agency as a deposit on the property be returned to him. This return was in fact accomplished by means of a letter.
One or two days after September 23, Mrs. Gelpi received a telephone call from *165 Mr. Newman at which time he asked her if she would meet him at a restaurant to have a cup of coffee. She agreed to the meeting and at the time that they met, Mr. Newman again broached the subject of paying some cash consideration to Mrs. Gelpi so that he might be released from his agreement with Maher & Sharkey, and be enabled to go directly to Val-U Investment to purchase the home. Mrs. Gelpi’s testimony is to the effect that she again refused this offerr-and that when she did so, Mr. Newman became quite angry, somewhat abusive, and left the restaurant.
After this meeting with Mr. Newman, Mrs. Gelpi returned to her office and addressed a letter to Val-U Investment Corporation wherein she informed them that she thought she might be able to revive Mr. Newman’s interest in the house. No reply was ever received to this letter.
On October 5, 1963, Val-U Investment Corporation sold the subject property to a Air. Presley Bordeaux, a resident of Lafayette Parish, for a recited consideration of $30,500.00. Thereafter, on October 14, 1963, Presley Bordeaux sold the identical property to the defendant, Hoyt C. Newman, for a recited consideration of $32,500.00.
There is testimony in the record from Mr. William Daniels to the effect that he had been contacted by Mr. Newman in connection with Mr. Newman’s attempt to purchase this house and that he and Mr. Newman had driven to Lafayette to discuss the matter with Val-U Investment Corporation. Mr. Daniels’ testimony is that after arriving in Lafayette and commencing to discuss the matter with Mr. Bares and Mr. Smith of Val-U Investment, he became aware of the fact that the house in question was the identical house in which he himself had previously been interested, and was still interested. Mr. Daniels and Air. Newman discussed the proposed acquisition of the house from Val-U Investment and there is testimony in the record to the effect that Val-U Investment was at that time willing to sell the property to Mr. Newman provided he would promise to indemnify Val-U Investment Corporation for any claims which Maher & Sharkey might have for realtor fees. Mr. Newman refused to do this.
Subsequent to this conference at which Mr. Newman refused to agree to indemnify Val-U Investment for any claim for realtor fees, Mr. Presley Bordeaux came into the office of Val-U Investment Corporation, and signed a purchase agreement with Val-U Investment wherein they agreed to sell and he agreed to buy the subject property. At this time, Mr. Bordeaux gave a $500.00 check to Val-U Investment as a binder. The record indicates that the $500.00 given by Mr. Bordeaux to Val-U Investment was advanced by Mr. Daniels, but that Mr. Daniels was reimbursed therefor by Mr. Newman.
With reference to the testimony of Mr. Bordeaux, the Trial Judge in his written reasons for judgment made the following observation:
“Mr. Bordeaux testified, and the Court believes, that he was promised that should he purchase this property that the property would subsequently be bought by either Mr. Daniels or Mr. Hoyt Newman at no loss to Mr. Bordeaux. Mr. Daniels testified that he gave Mr. Newman the first option or right to purchase the property from Mr. Bordeaux, in as much as Mr. Daniels had been acting somewhat in a representative capacity for Mr. Newman.”
Mr. Daniels testified in substance that the parties knew of the listing agreement between the plaintiff and Val-U Investment Corporation and that the question of realtor fees was discussed.
At the time of the passage of the act of sale from Val-U Investment Corporation to Mr. Bordeaux, the consideration was paid by Mr. Bordeaux in the form of a check in the amount of $5,779.53, drawn on Union Federal Savings and Loan As *166 sociation in Baton Rouge, Louisiana, which check was made payable to Hoyt C. Newman or his wife, and which had been endorsed by Mr. Newman to Mr. Bordeaux. The recited consideration for the sale from Mr. Bordeaux to Mr. Newman is, as we mentioned earlier, $32,500.00. There is testimony in the record which strongly indicates that the actual consideration involved in the sale from Bordeaux to Newman was the same as that involved in the conveyance from Val-U Investment to Bordeaux, with the exception of some past due notes.
After trial on the merits, the Trial Judge rendered judgment in favor of the plaintiff and against Val-U Investment Corporation in the amount of $1830.00 and dismissed the plaintiff’s suit as against Mr. Newman.
In his written reasons for judgment, the Trial Judge makes the following observations :
“The Court is of the opinion that, in respect to Mr. Hoyt Newman, there is no question but that Mr. Newman knew exactly what was going on during this entire transaction, otherwise he would not have endorsed his check to Mr. Bordeaux for $5,779.00. However, Mr. Newman is not subject to any contract with the plaintiff. The Court believes that Val-U Investment Corporation knew or, in the exercise of reasonable judgment, should have known that Mr. Bordeaux was an interposed person for the purchase of this property. First, there is testimony concerning the conversation at the first meeting concerning a direct sale to Mr. Newman, which could not be accomplished because Mr. Newman refused to reimburse Val-U Investment Corporation in the event Maher & Sharkey, Incorporated, made a claim for realtor’s commission. Secondly, there was the fact that Mr. Newman was present at this sale to Mr. Bordeaux as testified to by Mr. Bares and, thirdly, the fact that the check for $5,779.53 used as a portion of the cash payment was payable to Mr. Newman and his wife and endorsed by them to Mr. Bordeaux. This, the Court feels, was sufficient to notify any reasonable person that Mr. Bordeaux was acting as an interposed purchaser. Therefore, on the basis of the contract made over the telephone and verified by the telegram between Maher & Sharkey, Incorporated, and Val-U Investment • Corporation, the Court is of the opinion that the defendant, Val-U Investment Corporation, is liable to. the plaintiff for the amount of the realtor’s commission and therefore, grants judgment in favor of the plaintiff and against the defendant, Val-U Investment Corporation, in the full and true sum of $1,830.00 together with interest from date of judicial demand until paid and for all costs, and judgment will be signed accordingly.
Baton Rouge, Louisiana, this 17th day of May, 1966.”
It is from this judgment that Val-U Investment Corporation has appealed setting forth the following specifications of error:
1. That the Trial Court erred in concluding that the telegram (contract) between Val-U Investment Corporation and Maher & Sharkey Inc. was valid and should be enforced, and
2. That the Court erred in concluding that Val-U Investment Corporation knew or should have known that Bordeaux was an interposed person for the purpose of purchasing the property from Val-U Investment for transfer to Newman.
Appellant contends that its agreement with Maher & Sharkey was void because it contained a potestative condition and therefore prohibited by LSA-C.C. Arts. 2024 and 2034. These Articles, together with Article 2035, have been interpreted to mean that an obligation is voidable provided the nullity is set up prior to performance of the contract. Where there has been even a partial performance of the con *167 tract, the contract is not null and void because of it simply containing a potestative condition. Phillips v. Mid-Continent Life Insurance Company, La.App., 130 So.2d 791, 797; Hansman v. Uddo and Taormina Company, La.App., 76 So.2d 753, 755; Charest v. Busby, La.App., 141 So.2d 466, 469; Owens v. Muslow, 166 La. 423, 117 So. 449. The potestative condition alleged by appellant is concerned with the matter, of price and is based upon Val-U Investment’s ability, to accept or reject.any price submitted by Maher & Sharkey in its negotiations with Mr. Newman. Appellant therefore argues that Val-U Investment’s obligation to pay Maher & Sharkey a commission depended upon a condition solely within the will of Val-U Investment to permit or prevent. We are of the opinion, however, that the primary obligation undertaken by Val-U Investment in its agreement with Maher & Sharkey was to give Maher & Sharkey the exclusive right to negotiate with Newman for the sale of the property and.to pay Maher & Sharkey the standard commission if the negotiation resulted in the sale of the property. We believe that the condition of the contract which had to be fulfilled was the sale of the property to Newman through the efforts of Maher & Sharkey, and once that condition was fulfilled, the corresponding obligation of Val-U Investment Corporation to pay the commission arose and became absolute. We believe that the services of Maher & Sharkey, rendered under its agreement with the appellant, resulted in the sale of the property in question under circumstances which created on the part of the appellant the obligation to pay Maher & Sharkey a real estate broker’s commission.
With reference to appellant’s second specification of error, that is the Trial Court’s alleged error in concluding that Val-U Investment knew or should have known that Bordeaux was an interposed person, we believe that the undisputed facts contained in the record amply support this conclusion on the part of the Trial Judge. All of the circumstances under which Val-U Investment Corporation negotiated with and sold the property to Bordeaux, who in turn sold to Newman, we believe and amply support the proposition that Val-U Investment knew or should have known that it was, in effect, selling the property to Newman through an interposed third party. Val-U Investment never communicated to Mrs. Gelpi whether the offer made by Newman through Mrs. Gelpi to Val-U Investment to purchase the property was accepted or rejected. The offer was taken under consideration by Val-U Investment with the promise that its president, Mr. Smith, would later communicate with Mrs. Gelpi, which he never did. Rather, he came to Baton Rouge shortly thereafter and communicated directly with Mr. Newman. Sometime between September 16, 1963 and the date of the purchase of the property by Bordeaux on October 5, 1963, Mr. Newman and his attorney, Mr. Daniels, went to Lafayette and conferred with Mr. Bares and Mr. Smith concerning a direct purchase of the property. At that time, Val-U Investment refused to sell directly to Mr. Newman without an indemnity agreement from Mr. Newman on the commission. Then, at that same time, Mr. Daniels asked Mr. Bares if Val-U Investment would sell the property to Mr. Bordeaux. When the sale was executed between Val-U Investment and Mr. Bordeaux on October 5, 1963 at the office of Val-U Investment, with Mr. Bares presiding over the closing, Mr. Newman was present, and the cash portion of the purchase price was supplied by a check of the Union Federal Savings and Loan Association in Baton Rouge in the sum of $5,779.53, payable to Hoyt C. Newman and endorsed by him to Bordeaux, and in turn by Bordeaux to Val-U Investment. This check was received by Mr. Bares at the time the sale to Bordeaux was being executed. In response to questions by the Trial Judge on this point, Mr. Bares testified that when he saw Mr. Newman’s name on the check he could not help thinking about the possibility that Mr. Bordeaux was an interposed party.
*168 We feel that the employment by Bordeaux of a check which was obviously Newman’s to pay the cash portion of the consideration for the sale of the property should have, in itself, in the light of the previous transaction which had transpired between Val-U Investment and Mr. Newman, placed Val-U Investment on notice that Mr. Bordeaux was an interposed party.
Accordingly, we find no error in the judgment of the Trial Court, and said judgment is therefore affirmed, appellant to pay all costs of this appeal.
Judgment affirmed.