500 So.2d 764 (1987)
GIBBS CONSTRUCTION COMPANY, INC.
v.
A.C. THOMAS, et al.
No. 86-C-1208.
Supreme Court of Louisiana.
January 12, 1987.
Rehearing Denied February 12, 1987.
*765 Henry Dart, New Orleans, for applicant.
Henry Mestayer, A.D. Freeman, Satterlee, Mestayer & Freeman, New Orleans, for respondents.
COLE, Justice.
This is a suit for damages for nonperformance of a construction subcontract which existed between Gibbs Construction Company, and A.C. Thomas, doing business as L & L Painting and Drywall Company. Plaintiff Gibbs Construction Company (Gibbs) appeals from the judgment of the court of appeal, which found the contract null on the basis it contained a purely potestative condition. The primary issue is whether the defendant breached the contract by rescinding and refusing to perform, or whether the contract was null and void because of the existence of a purely potestative condition.

FACTS
On July 8, 1983, Gibbs, the general contractor, entered into a written subcontract with L & L. Under this subcontract L & L was to do the painting and drywall portion of construction of a 130-room motel at the intersection of I-10 and Bullard Road in New Orleans, Louisiana. As a condition of the subcontract, the owner of L & L, Mr. A.C. Thomas, was required to post a $25,000 letter of credit to Gibbs in lieu of a performance bond. The purpose of the letter of credit was to protect Gibbs from any default by L & L. The specific language of this provision, inserted in an addendum, reads as follows:
This contract is valid upon receipt of acceptable $25,000 letter of credit from a FDIC insured bank.
As stated by Gibbs and Thomas in their testimony, Thomas obtained the $25,000 letter of credit within a week after execution of the subcontract, but never delivered it to Gibbs.
Because of the order in which the motel was to be constructed and as a result of delays in construction, L & L was not to commence its portion of the work until December 1983 or January 1984. However, on November 10, 1983, Thomas wrote a letter rescinding the subcontract, stating his reasons were unavailability of materials and increased costs of acquisition. As a result of L & L's default, Gibbs was required to seek other means by which to get the work done, eventually performing some of the work itself and contracting with other subcontractors to perform the remainder. The total cost to Gibbs under this arrangement exceeded L & L's original contract price, and Gibbs seeks as damages the difference between the final collective cost and the original subcontract price agreed to by L & L.
The trial court found the subcontract to have been a conditional obligation subject to a suspensive condition. Because this suspensive condition never occurred, the court rendered judgment in favor of the defendant, finding Thomas not liable for breach of contract. The court of appeal affirmed, agreeing the subcontract contained a conditional obligation. However, this court ruled the suspensive condition was made up of two elements, the first of which was fulfilled. This was the procurement of the letter of credit. Not fulfilled, however, was the second element of the contracted condition, which required the actual receipt by Gibbs of the letter of credit. The court determined this second element constituted a purely potestative condition, due to it being totally within the power of Thomas to deliver or not. The court reasoned Thomas' refusal to surrender the letter of credit caused the simple suspensive condition of the first element to be transformed into a purely potestative condition, which made the contract null and void as a matter of law.
Gibbs in brief relies on three assignments of error. He first contends Thomas should not be able to rely on his own misdeeds *766 to defeat his obligations. La. Civ. Code art. 2040.[1] Secondly, he challenges the court of appeal characterization of the language in the addendum as a purely potestative condition. Finally, he argues the court of appeal erred in relying on the trial court's finding the suspensive condition had failed due to non-fulfillment. Because we find merit in all three assigned errors and find the defendant breached his contract, we reverse the judgments of the lower courts and remand for determination of quantum.

FIRST ASSIGNMENT OF ERROR
In Gibbs' initial assignment of error, he urges Thomas' actions in deliberately preventing fulfillment of the suspensive condition should result in the rule of La. Civ. Code art. 2040 being applied to Gibbs' benefit. Gibbs argues the suspensive condition of receipt of the letter of credit by him should thus be considered as having been fulfilled, and the contract should be enforceable.
La. Civ. Code art. 2040 provides as follows:
The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it.
This Court has long recognized the proper interpretation of this article is "the condition is considered fulfilled, when it is the debtor, bound under that condition, who prevents the fulfillment." George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28 (1954); Southport Mill v. Friedrichs, 171 La. 786, 132 So. 346 (1931). This rule is an application of the long-established principle of law providing he who prevents a thing may not avail himself of the non-performance he has caused. This principle is derived from the premise one should not be able to take advantage of his own wrongful act. Cox v. Department of Highways, 252 La. 22, 209 So.2d 9 (1968); Walls v. Smith, 3 La. 498 (1832).
In George W. Garig Transfer, supra, the above rules of law were applied in a suit for damages for breach of a contract to sell a certificate of the Public Service Commission for a common carrier. The contract provided the transfer was conditioned upon approval by the Commission, and the buyer and seller filed a joint petition for transfer of the certificate. The seller withdrew his petition, however, and the Commission denied the transfer, stating it would have approved had the seller not withdrawn. The buyer sued the seller to be declared the owner of the certificate, and this Court ruled as follows:
We are also in full accord with the trial judge's view that the escrow agreement was a binding obligation on both parties, under the Civil law. True, it contained a suspensive condition, but "The contract of which the condition forms a part is, like all others, complete by the assent of the parties; * * *" LSA-C.C. Art. 2028, and "Every condition must be performed in the manner that it is probable that the parties wished and intended that it should be" LSA-C.C. Art. 2037; moreover, the condition is considered as accomplished when the debtor, bound under that condition, has prevented its accomplishment, Art. 2040. * * * Clearly, under the facts of this case, the defendant was without legal or moral right to withdraw from the joint application to secure the transfer from the Public Service Commission, and, by withdrawing, has brought about the failure to receive the approving Order of the Commission, since it is clearly stated in the ruling of that body that but for the withdrawal of the defendant, the transfer would have been approved. George W. Garig Transfer, [75 So.2d] at p. 32-33.
Various decisions of the intermediate courts similarly apply the rule of La. Civ. Code art. 2040 to prevent an obligor from defeating his obligation. In Moss v. Guarisco, 459 So.2d 1 (La. App. 1st Cir.1984), writ denied, 462 So.2d 1267 (La.1985), plaintiff *767 and defendant entered into a buy-sell agreement for sale of a franchised automobile dealership. Necessary for transfer of the dealership, however, was Pontiac's approval of the buyer. For the approval to occur, defendant would have to recommend plaintiff as recipient of the franchise. This defendant never did. The First Circuit concluded the buy-sell agreement was binding, despite defendant's refusal to make the requisite recommendation. While it was true the agreement did not state the defendant had an obligation to make this recommendation to Pontiac, the court determined there was no point in making the agreement had the parties not intended that he do so, citing La. Civ. Code art. 2037. It was deemed highly improbable two astute businessmen would engage in such meaningless activity as to enter into a buy-sell agreement without the intention of performing as required.
To defendant's contention the trial court finding no contract existed should prevent him from being liable for breach, the court noted the contract was not fulfilled because of defendant's failure to recommend the plaintiff to Pontiac. Relying on La. Civ. Code 2040, the court stated to find the defendant free of liabilty would allow him to take advantage of his own wrong. This was impermissible and damages were awarded to plaintiff.
This article has also been applied to uphold sales contracts conditioned upon the obtaining of financing. In Kraft v. Baker, 377 So.2d 871 (La. App. 4th Cir.1979), the Fourth Circuit applied La. Civ. Code art. 2040 to hold the failure of the obligor to fulfill the suspensive condition in the contract resulted in the condition being waived and therefore fulfilled. Here the contract for the sale of immovable property was conditioned on the buyer's ability to borrow a certain sum of money. The court of appeal agreed with the trial court's finding the buyer had failed to make the necessary good faith effort to obtain financing and fulfill the suspensive condition. This failure waives the condition and estops the obligor from asserting the nullity of the contract. See also Achord v. Smith, 451 So.2d 1315 (La. App. 1st Cir.1984).
In National Safe Corp. v. Benedict and Myrick, Inc., 371 So.2d 792 (La.1979), this Court stated the following:
Article 1901 of the Civil Code requires good faith performance of all agreements. A principle of implied obligations in contracts is also stated in Article 1903 of the Code in these words: "The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect." The effect of equity on implied obligations is expressed in Article 1964 in these terms: "Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources." Insofar as pertinent here, the "equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us...." La. Civil Code art. 1965.
The court of appeal in the case before us determined the suspensive condition in the contract was composed of two elements, procurement and delivery of the letter of credit. We disagree, finding instead the obligation of delivery is implicit in the agreement, under La. Civ. Code art. 1903.
Here the contract was conditioned upon Gibbs' receipt of the $25,000 letter of credit. Thomas obtained the letter of credit, but never carried out the suspensive condition completely, due to his failure to fulfill the obligation of delivery implied in the agreement. Under La. Civ. Code art. 2037, as earlier cited, every condition must be performed in the manner it is probable the parties intended. There would have been no purpose in Thomas' merely obtaining the letter of credit and not delivering it, for as is evident in Gibbs' testimony, the letter of credit was to act in lieu of a performance bond. It thus was to provide security to Gibbs in the event of default by L & L.
*768 Though the obligation to deliver the letter of credit was not explicitly stated, as indicated above, not all obligations of contract need be. Into all contracts, good faith performance is implied. La. Civ. Code art. 1901. Furthermore, everything that by equity is considered incidental to a particular contract, or that is necessary to carry it into effect, is also a part of the agreement. Thomas failed to make the requisite, implied good faith effort to carry out the entire suspensive condition as originally intended by the parties, as he had approval but purposely failed to fulfill the implied obligation of delivery. We cannot permit this obligor to defeat his obligation by his deliberate actions which prevented complete accomplishment of the condition, under La. Civ. Code art. 2040.
To Thomas' contention his withholding of delivery of the letter of credit was due to his concern he would not be able to obtain the necessary materials, we find from his testimony at trial he was aware of the shortage of sheetrock at the time he contracted with Gibbs. However, he still entered into the contract which specifically required him to buy all the sheetrock for the job. Further, Thomas rescinded in November, knowing he did not actually need the sheetrock until December 1983 or January 1984. As testified at trial by Mr. Gibbs, the actual proof of its availability lay in the fact he did obtain all the sheetrock necessary to complete the job for construction of the motel. Though sheetrock acquisition was difficult, it never slowed the progress of the job. It is not the province of the courts to relieve a party of a bad bargain, no matter how harsh. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970).
Therefore, we hold Thomas' failure to deliver and thus totally fulfill the suspensive condition waives the condition which we deem fulfilled. He is estopped from asserting the nullity of the contract on this basis.

SECOND ASSIGNMENT OF ERROR
In the second assignment of error, Gibbs asserts the court of appeal erred in finding the contract null and void because of a potestative condition. According to the court of appeal, and the arguments set forth by Thomas, this condition existed because it was entirely within the power of Thomas to deliver or not deliver, under the terms of the agreement. Thus, the formation of the obligation depended completely on the obligor's will, and no contractual obligation was formed until the condition was fulfilled and the letter of credit was delivered to Gibbs.
The potestative condition is defined by La. Civ. Code art. 2024:
The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder.
La. Civ. Code art. 2034 provides as follows:
Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself.
This article is followed by La. Civ. Code art. 2035, which makes it clear not all potestative conditions nullify a contract:
The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void.
The above articles were clarified in Franks v. Louisiana Health Services & Indemnity Co., 382 So.2d 1064 (La.App. 2d Cir.1980):
The jurisprudence establishes that only those potestative conditions which are dependent solely upon the will, whim, or caprice of the obligor invalidate the contract. * * * If the condition shows on its face that the obligor may or may not fulfill his obligation as per his desire, then the obligation is null. However, if *769 the condition imposes on the obligor the duty of making a sincere effort to fulfill the obligation, then the fact that the obligor is in a position to hinder or prevent the execution of the contract does not make the contract null. * * * [T]he obligor has the duty to reasonably perform the condition which is a condition precedent to the obligation.
In short, a "simple" potestative condition suspends execution of the obligation rather than formation, and requires the obligor to make a good faith effort to carry out the obligation. Sam's Style Shop v. Cosmos Broadcasting Corp., 694 F.2d 998 (5th Cir. 1982).
Louisiana law does not favor the interpretation of contract conditions as purely potestative. Rather, agreements are to be construed, wherever possible, to preserve their validity. Sam's Style Shop, supra; Schwegmann Brothers v. Calvert Distillers Corp., 184 F.2d 11, 14 (5th Cir. 1950), rev'd on other grounds, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951).
Thus, in Morrison v. Mioton, 163 La. 1065, 113 So. 456 (1927), and Freedman v. Faia, 176 So.2d 213 (La. App. 4th Cir.1965), the court determined a contractual provision which made a sale contingent upon the buyer's ability to obtain a particular loan on the property was not a potestative condition which rendered the agreement null. Instead, this was a valid suspensive condition which imposed upon the obligor the inescapable obligation to make a good faith effort to obtain the loan, as required under La. Civ. Code 1901.
Therefore, under the above codal provisions and by analogizing to sales contracts contingent upon obtaining financing, we find the condition contained in the addendum is not purely potestative. This obligation did not depend solely upon the will, whim, or caprice of the obligor. Nor was it evident from the face of the contract the obligor could or could not fulfill the obligation as he desired. Instead, the condition impliedly imposed upon Thomas the duty of making a good faith effort to obtain and deliver the letter of credit. It did not give him an absolute and arbitrary right to refuse to deliver the letter of credit after obtaining approval.
Moreover, even were we to find this condition constituted a potestative condition which normally would render the contract null, where there has been even a partial performance of the contract, that performance negates the nullity. Owens v. Muslow, 166 La. 423, 117 So. 449 (1928); Hansman v. Uddo & Taormina Company, 76 So.2d 753 (La.App.Orl.1955). Thomas' obtaining the letter of credit constitutes such partial performance, as does Gibbs' actions in going ahead with construction while relying on the subcontract with Thomas. This partial performance by the respective parties accordingly validates the contract.

THIRD ASSIGNMENT OF ERROR
In his last assignment of error, Gibbs focuses on the court of appeal's decision to the extent it relied on the trial court ruling which determined the suspensive condition had failed due to non-fulfillment. This ruling was based on La. Civ. Code art. 2038, and rendered the obligation unenforceable.
La. Civ. Code art. 2038 states:
When an obligation has been contracted on condition that an event shall happen within a limited time, the condition is considered as broken, when the time has expired without the event having taken place. If there be no time fixed, the condition may always be performed, and it is not considered as broken, until it is become certain that the event will not happen.
Gibbs in brief asserts La. Civ. Code art. 2038 does not apply to defeat the suspensive condition. Gibbs contends though a deadline was imposed for meeting the suspensive condition, the deadline date here had not passed at the time the contract was rescinded. The deadline date for the presentation of the letter of credit was the date on which Thomas was to begin his job, as Gibbs would have required presentation *770 prior to commencement of Thomas' job. Thus, as urged by Gibbs, the condition was not "broken" under La. Civ. Code art. 2038, and the contract should be enforceable.
We agree. The trial court findings are not supported by the evidence. The trial court determined the work was to have started in November and so the time for beginning the work had lapsed prior to rescission. Both Gibbs and Thomas testified at trial Thomas' starting date had been moved back due to delays in construction, and Thomas was consequently not to begin his portion until December 1983 or January 1984. The rescission letter was written November 10. Where the commencement date of Thomas' job was at least one to two months away at the time of rescission, the deadline date for presenting the letter of credit had not passed. Therefore, the condition was not broken under La. Civ. Code art. 2038, and the contract is enforceable.

DAMAGES
Under La. Civ. Code art. 2769, if an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he agrees to do it, he is liable in damages for the losses that ensue from his noncompliance with the contract. The general rule as to the measure of damages is the creditor should be awarded the amount of the loss he has sustained, or the gain of which he has been deprived. La. Civ. Code art. 1934. The proper measure of damages in this case is therefore the amount necessary to place Gibbs in the same position he would have been in had Thomas completely fulfilled the suspensive condition and delivered the letter of credit.
Gibbs is entitled to recovery for the damages he sustained due to Thomas' breach. As a matter of policy, we usually do not fix quantum where neither the trial nor intermediate court has passed upon that element of the case. Dupas v. City of New Orleans, 354 So.2d 1311 (La.1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 788 (1979); Smolinski v. Taulli, 276 So.2d 286 (La.1973). Instead, we remand the proceedings for that purpose.
For the reasons assigned, the judgments of the district court and of the Court of Appeal, Fifth Circuit, are reversed. The case is remanded to the Court of Appeal, Fifth Circuit, in order that it may fix the damages to which Gibbs is entitled and render judgment.
REVERSED AND REMANDED.
DIXON, C.J., dissents with reasons.
CALOGERO and WATSON, JJ., dissent and assign reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
There was never an enforceable contract in this case. See former C.C. 1761. By its own terms, the contract was not "valid" until Thomas furnished an "acceptable $25,000 letter of credit."
CALOGERO, Justice, dissenting.
The majority's scholarly opinion in this case is supported largely by analogizing the contract to agreements with suspensive conditions, such as an agreement to purchase real estate. Where a sale is conditioned on the buyer's ability to obtain a loan, the buyer clearly has an obligation to make a good faith effort to obtain that loan. Furthermore, whether or not he makes the effort is irrelevant if the vendor can show that the buyer could have obtained a loan.
Analogously, this obligor would be obligated if the contract was conditioned on his ability to obtain a letter of credit. But this contract was not conditioned on his ability to obtain a letter of credit; rather it specified that it would be "valid", i.e. a confected contract, upon receipt by the obligee of the letter of credit (conversely, upon the obligor's delivery of the letter of credit to the obligee). I am inclined to agree with my brother Justice Watson's dissent. The *771 parties intended that a letter of credit would be provided in lieu of a performance bond. If the obligor, subcontractor Thomas, wanted the job, he would have to deliver a letter of credit. Until such time, there was no executed bilateral contract.
I agree with the majority that there is no potestative condition here, for the reasons expressed in the majority opinion. The sub-contractor should prevail in this case because of the clear language of the contract ("this contract is valid upon receipt of acceptable $25,000 letter of credit from a FDIC insured bank") and the evident intent of the parties. The parties intended that there be no binding contract until respondent chose to furnish, and did furnish, the letter of credit in lieu of a performance bond.
WATSON, Justice, dissenting.
In the subcontract prepared by or on behalf of Gibbs, a provision was inserted which said: "this contract is valid upon receipt of acceptable $25,000 letter of credit from an FDIC insured bank." The parties now agree that the letter of credit was to serve in lieu of a performance bond.
Thus, the sense of the letter of credit idea was that Gibbs did not want to contract with Thomas unless Thomas posted the letter of credit to protect Gibbs in case of a default. Thomas failed to deliver the letter of credit and, therefore, there was no receipt of a letter of credit by Gibbs. If plain words mean anything, it follows that there was no valid contract.
The majority reads something into the contract which is not there when it infers that Thomas was under some sort of good faith obligation to attempt to obtain a letter of credit. Gibbs said in effect to Thomas: If you want the job, bring us a letter of credit. For reasons best known to Thomas, he declined to do so and he did not get the job. No letter of credit equals no contract. The majority errs in a thorough and scholarly analysis by finding responsibility for damages under a contract which never came into existence.
I respectfully dissent.
NOTES
[1] As the subcontract was entered into in 1983, prior to revision of the obligation articles effective January 1, 1985, all references in this opinion are to those articles in force prior to the 1984 amendments.