O’NIELL, C. J.
 

 This is a suit to recover-from a real estate broker the sum of $5,000, which he retained as a commission on a contract for the.sale of the plaintiff’s property, known as Isle des Coquilles. The money was retained by the broker out of a deposit of $10,000, made by a prospective purchaser, as earnest money, to bind an agreement to buy the property for $100,000, which agreement was not fulfilled.
 

 The civil district court first gve judgment for the plaintiff on the petition and answer; but, on appeal to this court, the judgment was annulled and the case remanded for trial on its merits. See Southport Mill, Limited, v. George G. Friedrichs, 167 La. 101, 118 So. 818. The civil district court, having heard the evidence, has rendered judgment again in favor of the plaintiff for the amount sued for; ánd the defendant has appealed from the decision.
 

 The contract between the plaintiff and defendant was evidenced by two letters, written by the president of the plaintiff corporation, to the defendant, both letters being dated and delivered to the defendant on the 26th of July, 1923. The first letter reads as follows:
 

 “As you are aware, the Isle des Coquilles, or Prevost Island, with other lands lying contiguous thereto, is the property of the South-port Mill, Ltd., of which I am president and general manager, and my acts must be confirmed by resolution of their board of directors, which I will undertake to have convened at the earliest opportunity, to carry out in good faith the purposes we both have in view. In the meanwhile, and with this understanding, I will agree to give you and your assigns the sole privilege and right of offering the property for sale for a period of thirty days, with the right of renewing same for a period of 90 days thereafter, divided into three consecutive terms of thirty days each, for which you will pay in advance the sum of $200.00 for each renewal accorded under this contract.
 

 “It is specially stipulated and agreed that you shall have the sole right to offer for sale the said Isle des Coquilles, with its contiguous lands, together with all the buildings and improvements thereon, boats, tackle, live stock, agricultural implements, and other paraphernalia, and together with all the rights,
 
 *789
 
 ways, privileges and appurtenances thereto attached; and you shall have the right to name whatever price and figure you may ■deem most expedient, as the circumstances or your judgment may suggest, with the strict understanding, however, that the price shall not be less than $100,000.00 cash, or its equivalent, net to the Southport Mill, Ltd., and that the excess, whatever it may he, will accrue to you and your assigns as full compensation for selling the lands.
 

 “It is also
 
 understood and agreed that all expenses involved in exploiting and selling the lands, such as surveys, engineering work, and other expenditures of whatever kind, shall be borne by you and your assigns, entirely at your own cost, and that we will incur no liability therefor whatever.
 

 “It is understood that a good and valid title will be conveyed to the property known as the island, and that a quit-claim title without warranty will be given to all the other lands. We believe, however, we have a good and sufficient title to all of them, but, because of their relatively small value, have never investigated, and therefore do not wish to warrant title.”
 

 The second letter reads as follows;.
 

 “Concurrently with my letter of even date, giving you and your assigns contract to sell with option the property known as the Isle des Coquilles, with other land, this is to say that should the Southport Mill, Ltd., decide, during the period of this option, to accept less than $100,000.00 for the property, then and in that event you shall be entitled to a commission of
 
 5%
 
 upon the amount of sale.”
 

 The contract therefore, represented by the two letters dated the 26th of July, 1923, was perfectly plain. Friedrichs had the exclusive option of buying the property for $100,-000 cash, or of selling it for that price or any higher price and retaining the excess over $100,000, at any time within thirty days, and had the right to extend the term for one or more of -three consecutive periods of thirty days each, by paying $200 in advance for each extension. He had no authority to sell the property for less than $100,000; but, if the Southport Mill should have seen fit to sell it, or to allow Friedrichs to sell it, for a price less than $100,000, during the term of Friedrichs’ option, he would have been entitled to a commission of 5 per cent, of the price.
 

 On the 27th of September, 1923, the president of the Southport Mill wrote a letter and delivered it to Friedrichs, as follows:
 

 “Referring to my letter to you under date of July 26th, relative to the Isle des Coquilles, and also my conversation with you today, I wish to say that I have been fully authorized and empowered by my board of directors to offer you this property, in accordance with my letter to you under date of July 26th, above referred to, at the price of ($100,000.00) one hundred thousand dollars cash, or its equivalent, net Southport Mill, Ltd., and that the excess, whatever it may be, will accrue to you and your assigns as full compensation for • selling the land, with the understanding that you are to accept or decline within fifteen days from this date.”
 

 Within the fifteen days, that is to -say, on the 10th of October, 1923, Friedrichs obtained from Mrs. Eugene Ansley an agreement on her part to buy the property for $100,000, and obtained from her a deposit of $10,000 as earnest money, to bind the contract, and to be applied on the price in the event of her paying the $90,000 balance; and, on that day, Friedrichs remitted $5,000 to the Southport Mill, in a letter, saying:
 

 
 *791
 
 “I take pleasure in announcing that Mrs. Eugene Ansley has this day placed in my hands the sum of ten thousand dollars ($10,-000.00) on account of purchase price of the Isle des Coquilles, with its contiguous land, the whole being more fully described in the contract of option to purchase, given to me by your company on the 26th day of July, 1923, and also under date of September 27, 1923, supplementing same, all rights and advantages to which I have assigned to her.
 

 “I herewith enclose my check for $5,000.00, being the difference between the amount deposited and my commission of 5% upon the amount of the sale of the property, in conformity with our understanding and agreement.”
 

 The Southport Mill did not protest against Friedrichs’ retaining the amount of his commission, or formally acknowledge receipt of his check for $5,000.
 

 Mrs. Ansley did not succeed in her undertaking to buy the property. After several unsuccessful demands upon her, the Southport Mill formally put her in default on the 28th of March, 1924. She did not comply with the demand upon her to take the title and pay the balance of $90,000, but put her option and acceptance on record, with an affidavit stating her claims thereunder, in the conveyance records of St. Tammany parish, where Isle des Coquilles is situated. In October, 1924, the Southport Mill brought suit against Mrs. Ansley to have the contract declared forfeited and to cancel the inscription of the contract and affidavit, which created a cloud upon the company’s title. After filing an exception to the jurisdiction of the court, which was overruled, and after applying to this court for a writ of prohibition, which was refused, Mrs. Ansley answered the suit, on the 11th of February, 1925, contending that her contract was a completed sale, that she owed the company the $90,000 balance due on the price, and that the court should fix a reasonable time, say 60 days from the court’s decree, in which she should be allowed to pay the balance of the price. The district court gave judgment for the Southport Mill, declaring Mrs. Ansley’s rights under the contract forfeited, and ordering the inscription of it and her affidavit canceled from the records. Mrs. Ansley appealed to this court, and, pending the appeal, in October, 1925, she tendered to the Southport Mill the $90,-000 balance of the price, plus $10,000 to cover any expenses and damages incurred, and prayed that the company should be ordered to accept the payment and complete the sale, or that the case should be remanded to the district court for proof of the tender, etc. This court held that there was no good reason why the district court should have allowed Mrs. Ansley further time in which to comply with her obligation; that the Southport Mill was not obliged to accept the tender-made after Mrs. Ansley had been put in default and had forfeited her rights under the contract, and after she had been sued to have the forfeiture pronounced; and hence we affirmed the judgment of the district court. See Southport Mill v. Ansley, 160 La. 131, 106 So. 720.
 

 Thereafter, the Southport Mill brought this suit to recover from Friedrichs the $5,000 which he had retained in payment of the commission, which, by the terms of the contract, he was not entitled to.
 

 Friedrichs contends that he is entitled to the commission because the Southport Mill, by refusing to accept the tender made by Mrs. Ansley, prevented the fulfillment of the condition on which he (Friedrichs) was entitled to the commission. A sufficient answer to the argument is that the Southport Mill .
 
 *793
 
 was not obliged to accept the tender after Mrs. Ansley had been put in default, had forfeited her rights under contract, and had been sued by the company to have the s contract canceled from the records. Friedrichs cites and relies upon article 2040 of the Civil Code, which declares that, when the obligation of one of the parties to a contract depends upon a condition, the condition is considered as fulfilled if its fulfillment be prevented by the party whose obligation depended upon the condition. The language of the translation from the French test is incomplete and inaccurate, viz.: “The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it”— meaning the party whose obligation depends upon the condition. The French text of the article (2035) of the Code of 1825 was, “La condition est réputée accomplie, lorsque c’est le débiteur obligé sous cette condition qui en empíche l’aceomplissement,” which means that the condition is considered fulfilled, when it is the debtor, bound under that condition, who prevents the fulfillment. The error in the translation was observed long ago, and the French text has always prevailed in the decisions of this court. Walls v. Smith, 3 La. 498; Rightor v. Aleman, 4 Rob. 45; Morrison v. Mioton, 163 La. 1072, 113 So. 456, 459; Koch v. Emmerling, 63 U. S. (22 How.)
 
 74,
 
 16 L. Ed. 292.
 

 The condition on which the South-port Mill was obligated to pay Friedrichs a commission of 5 per cent., or $5,000, was that he, or his transferee, Mrs. Ansley, should comply with the obligation to accept the title and pay the $90,000 balance of the price. When she defaulted and forfeited the contract, it was she, and not the Southport Mill, who prevented the fulfillment of the condition on which the Southport Mill was obligated to pay Friedrichs the $5,000. It is argued, on behalf of Friedrichs, that the Southport Mill should have sued Mrs. Ansley for specific performance of her obligation to tate the title and pay the $90,000 balance of the price instead of suing to have the contract declared forfeited. The Southport Mill had the option either to sue for specific performance or to sue to have the contract declared forfeited. It was manifestly not advisable to sue Mrs. Ansley for specific performance when she was apparently not able to pay the $90,000 -balance of the price. Surely the obtaining of a judgment against her for $90,-000 at that time would not have been equivalent to her paying the $9Q,000 in cash.
 

 The attorneys for Friedrichs filed in this court a plea of estoppel, founded upon the fact that the Southport Mill did not protest against Friedrichs’ retaining the $5,000 as his commission out of the deposit of $10,-000, but, on the contrary, accepted the remittance of $5,000 and thereby tacitly acquiesced. We do not consider the Southport Mill’s acquiescence as meaning anything more than that Friedrichs should retain the $5,000 with the understanding and on the condition that the sale of the property for $100,000 cash should be carried out. That understanding was expressed in the letter of Mr. Friedrichs, accompanying the remittance, and describing the commission of $5,000 which he had retained as “my commission of 5%i upon the amount of the sale of the property, in conformity with our understanding and agreement.” Friedrichs admitted, in his testimony on the trial of this case, that he had had no other understanding or agreement with regard to his commission except what was contained in the letters written by the president of the Southport Mill and copied in this opinion. There is nothing in these letters which would entitle Friedrichs to a commission except no the condition that the property should be sold
 
 *795
 
 for the price and on the terms stipulated. If the Southport Mill had protested against Ereidrichs’ retaining the $5,000, he would have been obliged to turn it over to the Southport Mill. If he had remitted the entire deposit of $10,000 to the Southport Mill, he would not be entitled now to the $5,000. If he had retained the entire deposit of $10,000, he would be obliged now to pay it over to the Southport Mill. His contract did not entitle him to share in the deposit or forfeit of earnest money, but only to a commission, and only on the conditions stipulated in the contract, which conditions were not fulfilled.
 

 The judgment is affirmed.