368 So.2d 984 (1979)
Frank J. HALL et al.
v.
ARKANSAS-LOUISIANA GAS COMPANY.
No. 62560.
Supreme Court of Louisiana.
March 5, 1979.
Rehearing Denied April 9, 1979.
*986 Marlin Risinger, Jr., W. Michael Adams, Robert Roberts, Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, for defendant-respondent.
James Fleet Howell, Weiner, Weiss, Madison & Howell, Shreveport, for plaintiffs-applicants.
MARCUS, Justice.[*]
Plaintiffs, royalty interest owners, working interest owners, overriding royalty interest owners and unleased mineral interest owners, instituted this suit against Arkansas-Louisiana Gas Company to recover damages arising from an alleged breach of a gas purchase contract.
Plaintiffs, in their original and amended and supplemental petitions, alleged that on January 11, 1952, they, or their respective ancestors in title, entered into a gas purchase agreement with defendant wherein plaintiffs agreed to sell to defendant their natural gas, and the natural gas owned by their respective lessors, produced from certain described lands in the Sligo Gas Field, Bossier Parish, Louisiana. This agreement, by its terms, was to continue in effect from January 11, 1952, through June 1, 1980. Under the terms and provisions of this agreement, defendant was to pay a fixed schedule of prices for the natural gas delivered to it from plaintiffs. This agreement also contained a price adjustment provision, commonly referred to as a favored nations clause, which provided in pertinent part:
If at any time during the term of this agreement Buyer should purchase from another party seller gas produced from the subject wells or any other well or wells located in the Sligo Gas Field at a higher price than is provided to be paid for gas delivered under this agreement, then in such event the price to be paid for gas thereafter delivered hereunder shall be increased by an amount equal to the differences between the price provisions hereof and the concurrently effective higher price provisions of such subsequent contract. . . . It is agreed that any such higher price for gas delivered hereunder shall be effective on the first day of Buyer's accounting month (as elsewhere herein defined) next following the effective date of such subsequent contract, all subject, however, to any rules and regulations of the Office of Price Stabilization or any other regulatory body having jurisdiction.
Plaintiffs alleged that since January 11, 1952, they and their respective lessors, have sold substantial quantities of natural gas produced from wells in the Sligo Gas Field to defendant at the prices stipulated in the fixed schedule of prices as contained in the agreement. Plaintiffs further alleged that *987 from September 1961 until the date of the institution of this action, defendant purchased from another party seller (the United States government) natural gas produced from wells located in the Sligo Gas Field at a higher price (including prices paid for both the residue or dry gas and the liquid hydrocarbons or plant products extracted from the United States government's gas delivered to defendant's pipeline system) than it was paying to plaintiffs pursuant to the January 11, 1952 gas purchase agreement for plaintiff's dry or residue gas and liquid hydrocarbons or plant products extracted from plaintiff's gas and delivered into defendant's pipeline system. By paying a higher price to another party seller for natural gas produced from wells in the Sligo Gas Field, plaintiffs contended that defendant activated the provisions of the favored nations clause and legally obligated itself to advise plaintiffs of these facts and pay plaintiffs the higher price being paid to another party seller (the United States government) for natural gas produced from wells in the Sligo Gas Field. Plaintiffs contended that they were entitled to such higher price from the first time defendant paid such higher price to another party seller. Plaintiffs averred that defendant had at no time during the existence of the January 11,1952 agreement informed plaintiffs, or any of their representatives, of the fact that it had been paying a higher price to another party seller for natural gas produced from wells in the Sligo Gas Field. Plaintiffs thus argued that defendant had breached the favored nations clause of their agreement by failing to pay plaintiffs a price equal to the highest price paid by defendant to any other party seller for natural gas produced from wells in the Sligo Gas Field. Plaintiffs sought damages equal to the difference between the price paid to them and the highest price paid by defendant to any other party seller for such natural gas during the period of time that defendant purchased natural gas from the United States government.
In its answer, defendant admitted that it purchased substantial quantities of natural gas from plaintiffs pursuant to the January 11, 1952 gas purchase agreement. Defendant, however, averred that it had not at any time paid anyone a price higher than that paid plaintiffs for natural gas purchased from the Sligo Gas Field and it specifically denied that it was purchasing any natural gas produced from the Sligo Gas Field from the United States government. Further answering the petition, defendant alleged that the only contract between it and the United States government relating to the production of natural gas from the Sligo Gas Field was an oil, gas, and mineral lease dated January 23, 1961, and executed by the United States Department of the Interior in favor of Union Producing Co. and covering land situated in the Sligo Gas Field. Defendant averred that it acquired an undivided 15% interest in this lease by virtue of an assignment from Union Producing Co. on January 30, 1961, and argued that this lease did not constitute an offer or contract to sell natural gas, but, rather, granted defendant only the right to explore for, remove, and dispose of oil and gas. Hence, defendant contended, the only payments made by it to the United States government were the payments of royalty (based on the value of the natural gas and other products extracted from the natural gas) as provided in the lease and not payments for the purchase of natural gas from the United States government.
By supplemental and amended answer, defendant further alleged that the Federal Power Commission, pursuant to the provisions of the Natural Gas Act (15 U.S.C. § 717a-w) had sole jurisdiction over the sale of natural gas by plaintiffs to defendant under the January 11, 1952 gas purchase agreement upon which this action was founded. Defendant contended that, pursuant to 15 U.S.C. § 7170(d),[1] plaintiffs were *988 required to file and give notice of any proposed increase of rates, including any contractually-authorized rate increase, above the authorized initial rate and that, as plaintiffs had failed to file for such rate increase allegedly allowable under the favored nations clause, they were not lawfully authorized to collect the increased rate in this action. In addition, defendant averred that one of the named plaintiffs, W. E. Hall, Jr., executed, on May 25, 1969, an amendment to the gas purchase agreement of January 11, 1952, which deleted the favored nations clause from his contract with defendant. In view of this amendment, defendant contended that W. E. Hall, Jr. had no cause or right of action for any claim against defendant arising on or after May 25, 1969.
The trial court first held that payments made by defendant to the United States government under the terms of the lease constituted a "purchase from another party seller" within the meaning of the favored nations clause contained in the January 11, 1952 gas purchase contract entered into between plaintiffs and defendant. The court reasoned that defendant, in making payments to the United States government under its lease, was acting in a dual capacity: it was paying royalty as lessee and purchasing gas as pipeline purchaser. The court determined that defendant failed to advise plaintiffs of this fact or pay them the higher, contractually-authorized price. Having held that defendant breached the original gas purchase contract, the trial court next concluded that defendant would only be liable for damages (measured by the difference between the price paid the United States government and the price paid plaintiffs) for the period subsequent to the issuance of small producer certificates to plaintiffs in October 1972. The court reasoned that plaintiffs could not recover a "raise in prices" for the period prior to October 1972 because they had never obtained approval of a higher rate or price from the Federal Power Commission as required by 15 U.S.C. § 717c-d. The trial judge noted, however, that the regulations of the Commission (18 C.F.R. § 157.40) provide that a "small producer," as defined in the regulations, may obtain a small producer certificate from the Commission exempting it from the necessity of filing a rate schedule in order to obtain contractually-authorized rate increases if the rate increase does not exceed the ceiling rate set by the Commission. The trial judge determined that plaintiffs had obtained such "small producer certificates" in October 1972 and concluded that plaintiffs would be entitled to a recovery of damages for the period from October 1972 through December 1975. The trial court then determined that, because W. E. Hall, Jr. amended his contract with defendant on May 25, 1969, and deleted the favored nations clause from his contract, he had no claim against defendant under the favored nations clause subsequent to May 25, 1969, and would be entitled to no recovery of damages.
The court of appeal affirmed the trial court, holding that defendant had breached the favored nations clause of its contract with plaintiffs and that plaintiffs were entitled to damages measured by the difference between the price paid by defendant to the United States government and the price paid to plaintiffs (after applying adjustments for pertinent factors) only for the period from October 1, 1972 through December 31, 1975.[2] In addition, the court *989 of appeal held that W. E. Hall, Jr. had waived any claim for damages against defendant for the period subsequent to May 25, 1969, by entering into an amended contract with defendant on that date which deleted the favored nations clause from his contract.[3]
We denied defendant's application for a writ to review the correctness of the court of appeal's decision.[4] However, on application of plaintiffs, we granted a writ limited to a consideration of whether the court of appeal was correct in denying an award of damages to plaintiffs for the period of defendant's breach prior to October 1972 and whether it was correct in holding that W. E. Hall, Jr. "waived" any claim for damages against defendant by entering into an amended contract on May 25, 1969, which deleted the favored nations clause from his contract.[5]
We note, at the outset, that this controversy involves plaintiffs' claims for damages arising from defendant's breach of a gas purchase contract. The claims herein are not founded upon any liability created by the Natural Gas Act, but, rather, are founded upon a private contract deriving its force and effect from state law. There is no issue herein as to the reasonableness of the price, nor any attempt to adjudicate a proper rate, as defendant argues. Issues involving contract violation were not made subject to the cognizance of the Federal Power Commission by the enactment of the Natural Gas Act. Pan American Petroleum Corp. v. Superior Court, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961). The regulatory system of the Natural Gas Act is built upon private contracts, as modified by the Act, and the Act evinces no purpose to abrogate private gas purchase contracts. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373,100 L.Ed. 373 (1956). A determination of the appropriate measure of compensatory damages due plaintiffs as a result of defendant's breach of a private contract is, we believe, a matter particularly within the purview of our state law and state courts.
It is conceded by the parties before us that plaintiffs' recovery of damages arising from defendant's breach of the contract is to be measured by the difference between the price paid by defendant to the United States government and the price paid by it to plaintiffs (after adjustment for pertinent factors as indicated in the court of appeal opinion). The first issue presented for our resolution is a determination of whether plaintiffs are entitled to a recovery of the difference between such prices for the entire period of defendant's breach of the contract (September 1961 through December 31, 1975) or whether plaintiffs are precluded from a recovery of damages representing the period prior to October 1972.
Unless the Federal Power Commission otherwise orders, no change shall be made by any natural gas company in any rate received by it for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, or contract relating thereto, except after thirty days' notice to the Commission and to the public. 15 U.S.C. § 717c(a) & (d). Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when such changes will go into effect. Id.
*990 (d). A "small producer" (as defined by the Commission's regulations) may obtain a "small producer certificate" exempting it from the requirement of having to file a rate schedule as long as the increase in rate does not exceed the ceiling rate set by the Commission. See 18 C.F.R. § 157.40. Several of the plaintiffs obtained "small producer certificates" in October 1972, and the certificates issued to those parties were made effective as to all plaintiffs by order of the Commission. It is not disputed by the parties before us that the only rate schedule ever filed by plaintiffs with the Commission was the original gas purchase contract entered into on January 11, 1952. The trial court and court of appeal denied plaintiffs an award of damages arising from defendant's breach of contract for the period of time (I. e., prior to October 1972) during which plaintiffs were required to file new rate schedules with the Commission reflecting their entitlement under the contract, to a higher price for their natural gas sold to defendant.
La. Civ. Code art. 2040 provides:
The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it.
It is difficult to attach a precise meaning to the rule as it is literally set forth in the text of article 2040. This court, however, has long recognized that the English translation of this provision from the French articles as written in the Louisiana Civil Codes of 1825 (article 2035) and 1808 (article 78) is inaccurate and the French text has always prevailed in decisions of this court. See George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28 (1954); Southport Mill v. Friedrichs, 171 La. 786, 132 So. 346 (1931); Morrison v. Mioton, 163 La. 1065, 113 So. 456 (1927); Walls v. Smith, 3 La. 498 (1832) (dissenting opinion). Article 2040, properly interpreted, means that the condition is considered fulfilled, when it is the debtor, bound under that condition, who prevents the fulfillment. George W. Garig Transfer v. Harris, supra; Southport Mill v. Friedrichs, supra; Morrison v. Mioton, supra. This rule is but an application of the long-established principles of law that he who prevents a thing may not avail himself of the non-performance he has occasioned and that one should not be able to take advantage of his own wrongful act. See Cox v. Department of Highways, 252 La. 22, 209 So.2d 9 (1968).
The favored nations clause of the contract entered into between plaintiffs and defendant provided that, if defendant purchased from another party seller gas produced from any wells located in the Sligo Gas Field at a higher price than was provided to be paid for plaintiffs' gas, defendant was bound to pay plaintiffs for the gas delivered under their contract at a price increased by an amount equal to the differences between the price provisions of plaintiffs' contract with defendant and the concurrently effective higher price provisions of defendant's contract with the other party seller. To realize this higher, contractually-authorized price, plaintiffs, pursuant to the Natural Gas Act, were required to file new rate schedules with the Commission. However, plaintiffs were effectively precluded from making the requisite filings because they were not, at any time, informed by defendant that it was, in fact, paying a higher price to another party seller. Although defendant was only bound to pay plaintiffs a higher price if plaintiffs filed new rate schedules with the Commission, it is apparent that defendant prevented the fulfillment of that condition (plaintiffs filing with the Commission) by failing to inform plaintiffs of its contractual arrangements with the United States government. Pursuant to article 2040 and this court's jurisprudence interpreting that article, the condition (that plaintiffs file new rate schedules) is considered fulfilled. Hence, plaintiffs' failure to file the new rate schedules in no way precludes plaintiffs recovery of damages for the entire period of defendant's breach (September 1961 through December 31, 1975) as measured by the difference in the price defendant paid the United States government and the price defendant paid plaintiffs. To hold otherwise would be in clear contravention of the spirit and intent *991 of article 2040 and the jurisprudence of this court.[6]
The court of appeal also reasoned that plaintiffs' recovery of damages for the period of defendant's breach prior to October 1972 must be denied because such recovery would necessarily assume that a price increase would have been granted by the Commission. The appellate court concluded that the issue as to whether such approval would have been granted by the Commission was highly speculative and could not serve as a basis for an award of damages.
Actual damages arising from a breach of contract must be proven; they cannot be merely speculative or conjectural. Brown v. Producers' Oil Co., 134 La. 672, 64 So. 674 (1914). It must appear reasonably certain that the amount of damages rests upon a certain basis. Brown v. Producers' Oil Co., supra. Such proof need be only by a preponderance of the evidence; proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows that the facts or causation sought to be proved is more probable than not. Cf. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971). The sufficiency of proof of damages must be determined in relation to the particular contract at issue and the circumstances surrounding its breach. The question of the certainty of proof of damages becomes a matter for decision in each individual case. Angelloz v. Humble Oil & Refining Co., 196 La. 604, 199 So. 656 (1940).
At trial, a November 8, 1976 order of the Commission was produced which indicated the maximum rates to which plaintiffs would have been entitled if contractually authorized and if proper filing procedures had been followed (Exhibit D-59). The Commission clearly indicated in its order that it would have approved such rates. No evidence was adduced by defendant to establish that Commission approval would have been unlikely. It is our opinion that, taking the evidence as a whole, plaintiffs' proof shows that it was more probable than not that the Commission would have approved a contractually-authorized price increase if the proper filing procedures had been followed. It appears reasonably certain that the amount of damages claimed by plaintiffs rests upon a certain basis.[7]
In sum, it is our opinion that plaintiffs are entitled to a recovery of an award of damages measured by the difference between the price defendant paid the United States government and the price defendant paid plaintiffs (after applying various adjustments for pertinent factors) for the entire period of defendant's breach of contract from September 1961 through December 31, 1975.
We must next determine whether W. E. Hall, Jr. waived any claim against defendant for damages arising on and after May 25, 1969, because, on that date, he entered into a contract with defendant wherein he deleted the favored nations clause from the January 11, 1952 agreement. Plaintiffs argue that Hall executed the May 25, 1969 agreement without being informed by defendant that it had activated the favored nations clause of the original agreement and that defendant misrepresented facts to Hall by informing him that it was paying plaintiffs the highest prices that it was paying any other party sellers for gas produced from the Sligo Field. Plaintiffs contend *992 the May 25, 1969 agreement is void because Hall executed it under an error of fact.
Hall's testimony indicates that in 1969 he possessed an interest in a well (referred to as the Harvey well) under contract to Texas Gas Producing Company (Texas) with the natural gas produced therefrom being sold to Texas. In 1969, the Harvey well was nearly depleted and its pressure was dropping. The pressure on the Texas pipeline serving the Harvey well was too high for such gas to be carried through the pipeline. Hall stated that he was confronted with a situation where he was either going to have to "junk the well," buy a compressor and continue selling to Texas, or obtain a release from Texas and sell to another party with a lower pipeline pressure. After learning that the pressure on defendant's pipelines was lower than that on Texas' pipelines, Hall obtained a release from Texas and negotiated with defendant to take the gas from the Harvey well. An agreement was executed wherein defendant amended the January 11, 1952 gas purchase agreement to also cover Hall's share of the production from the Harvey well. This amendment also deleted the favored nations clause from the January 11, 1952 gas purchase contract. Hall maintained that had he been aware of the fact that defendant was paying a higher price to another party seller in the Sligo Field, he would not have agreed to the deletion of the favored nations clause. Hall also stated that his primary purpose in executing the May 25, 1969 agreement with defendant was to avoid having to purchase and operate a compressor and to be able to continue selling gas from the Harvey well.
Consent of the parties legally given is a requisite to the validity of a contract. La. Civil Code art. 1779. Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent where it has been produced by error. La. Civil Code art. 1819.
An error of fact proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none. La. Civil Code art. 1821. Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. La. Civil Code art. 1823. To have that effect, the error must be in some point, which was a principal cause for making the contract and when there are several this principal cause is called the motive and means that consideration without which the contract would not have been made. Id. & art. 1825. No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it. La. Civil Code art. 1826. These articles of our Code simply mean that error in the determining motive, or principal cause, of a contract vitiates consent and invalidates the contract. Error as to a subsidiary motive has no effect upon the validity of the contract. Cryer v. M & M Manufacturing Co., Inc., 273 So.2d 818 (La.1972); Stack v. Irwin, 246 La. 777, 167 So.2d 363 (1964); Carpenter v. Skinner, 224 La. 848, 71 So.2d 133 (1954).
A review of the record convinces us that the error relied upon by plaintiffs to invalidate the May 25, 1969 agreement was not an error in the determining motive, or principal cause, of the agreement. Hall's testimony clearly indicates that the determining motive, or principal cause, of the agreement was his desire to continue selling gas from the Harvey well and to avoid purchasing and operating a compressor for the Harvey well. Any error relating to the issue as to whether defendant had activated the favored nations clause of the original agreement was only error as to a subsidiary motive and has no effect upon the validity of the May 25, 1969 agreement. Hence, we determine that the May 25, 1969 agreement is not invalid as having been executed by Hall under an error of fact.
We construe plaintiffs' allegations as a contention that the misrepresentations and *993 omissions of defendant invalidated the contract because they constituted fraud.
Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. La. Civil Code art. 1847. Two elements are essential to constitute legal fraud: the intention to defraud and loss or damage or a strong probability of loss or damage. Buxton v. McKendrick, 223 La. 62, 64 So.2d 844 (1953). It is well settled that one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish fraud exceptionally strong proof must be adduced. Buxton v. McKendrick, supra; Sanders v. Sanders, 222 La. 233, 62 So.2d 284 (1952).
The trial court made no finding that defendant fraudulently concealed or misrepresented facts relating to its activation of the favored nations clause. The court of appeal, in affirming the trial court's determination on this issue, found the evidence insufficient to support plaintiffs' allegation of fraud. We have reviewed the record and it is our opinion that the determination made by the lower courts on this issue is correct. Plaintiffs failed to prove that defendant possessed the requisite intent to defraud.[8] Hence, the May 25, 1969 agreement executed by W. E. Hall, Jr. cannot be invalidated on the basis of alleged fraudulent conduct of defendant.
In sum, we conclude that the May 25, 1969 amendment to the original gas purchase contract executed by W. E. Hall, Jr. is a valid and enforceable agreement. Since the effect of this agreement was to delete the favored nations clause from the original contract, W. E. Hall, Jr. has no claims for damages against defendant arising on or after May 25, 1969.

DECREE
For the reasons assigned, judgment of the court of appeal is amended to allow plaintiffs (except W. E. Hall, Jr.) an award of damages measured by the difference between the price paid the United States government and the price defendant paid plaintiffs for the entire period of defendant's breach of contract from September 1961 through December 31, 1975; W. E. Hall, Jr.'s recovery of damages against defendant is to be measured for the period of time from September 1961 through May 24, 1969. The case is remanded to the district court for assessment of damages in accordance with the views herein expressed.
DIXON, J., concurs with reasons.
DIXON, Justice (concurring).
I fully subscribe to the opinion, but believe C.C. 2040 is applicable only by analogy, and that C.C. 2040 is probably a clarification of the original French text, not an "inaccurate" translation.
NOTES
[*] Chief Judge William A. Culpepper participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.
[1] 15 U.S.C. § 717c(d) provides:

Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.
[2] The court of appeal found that the calculations used by the trial judge to determine the amount of damages for the period from October 1, 1972 through December 31, 1975 were based on plaintiffs' calculations representing the entire period of the breach (September 1961 through December 31, 1975). The appellate court thus ordered the case remanded for a new trial restricted to the assessment of damages.
[3] 359 So.2d 255 (La.App. 2d Cir. 1978).
[4] 362 So.2d 1120 (La.1978). It is well settled that, when both parties apply for a writ of review, this court's denial of the application made by one of the parties constitutes our final determination upon the matters included therein. This court then will not pass a second time upon these matters at the hearing on review granted through the application of the other party. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). Hence, any questions relating to the determinations made by the courts below that defendant breached the favored nations clause of its gas purchase contract with plaintiffs are not now before us.
[5] 362 So.2d 798 (La.1978).
[6] We do not believe the debtor's bad faith or fraud (or lack thereof) is relevant to a determination of whether it has prevented the fulfillment of a condition under which it is bound. Planiol, in commenting upon the French counterpart of our article 2040, states, "[t]he act of the debtor, even when free from fraud, causes to the creditor a prejudice for which reparation is due, and the most complete reparation which can be offered to the creditor is the execution of the obligation, as if the condition had been accomplished. The act of the debtor can consist of any act whatsoever which prevents the realization of the condition." 2 M. Planiol, Treatise on the Civil Law, No. 388 A (La.St.L. Inst, transl. 1959).
[7] We note that plaintiffs make no claim that they would have been entitled to a price increase under their contract in excess of the respective area base rate ceilings for sales of natural gas as established by order of the Commission.
[8] In fact, it appears that the deletion of the favored nations clause from the original agreement was an effort by defendant to comply with the orders and regulations of the Federal Power Commission. By Order No. 232 A (25 F.P.C. 609), issued March 31, 1961, the Commission amended its regulations so as to provide that indefinite price escalation clauses (including favored nations clauses) in sales contracts executed on or after April 3, 1961, for the sale or transportation of natural gas subject to the jurisdiction of the Commission would be inoperative and of no effect at law. By Order No. 242 (27 F.P.C. 339), issued February 8, 1962, the Commission further amended its regulations to provide for the rejection of contracts containing such indefinite escalation clauses. See 18 C.F.R. §§ 154.93, 157.14 and 157.25.