MARVIN, Judge.
On the original appeal of this case in 1978, we affirmed a judgment activating a favored nation clause in a 1952 gas purchase contract which escalated the price of interstate natural gas purchased from the several plaintiffs by defendant Arkla. Plaintiffs there claimed that damages should have been assessed from September 1961, when Arkla began paying a higher price to another seller (the United States), through the year 1975 when suit was brought.
We affirmed the lower court’s determination that all plaintiffs except W. E. Hall were entitled to damages only from October 1, 1972 (when plaintiffs were excused by FERC from having to meet FERC requirements to obtain a price increase). W. E. Hall’s demands were dismissed on an exception of no cause of action because he had executed an agreement on May 25, 1969, deleting the favored nation clause from his 1952 contract.
The original damage award to plaintiffs totaled more than $900,000. This amount was determined by comparing the price paid to plaintiffs and to the government (for gas and products extracted from the gas) for the entire period (1961 — 1975). The lower court then proportionately reduced the amount for the entire period to determine the amount for 1972-1975. We remanded because neither party had pursued the lower court’s suggestion for expert assistance and had not provided the lower court with means to accurately reduce or extract the 1961 — 1975 data to facilitate determination of the damages for the 1972-1975 period.[1]
The Supreme Court granted writs and held in 1979 that the damages for all plaintiffs, except W. E. Hall, should be measured from September 1961 through 1975 and that W. E. Hall should be allowed damages for the period from September 1961 until May 25, 1969 (when he executed the agreement deleting the most favored nations clause from his contract). The Supreme Court “remanded to the district court for assessment of damages in accordance with [its] . . . views . . . ”[2]
On remand, the district court apparently considered that the computations and summaries used by the court in originally assessing damages for the 1961-1975 period, and which were contained in the original record and generally approved by us on the original appeal, provided a sufficient evi-dentiary basis for it to determine the damages to plaintiffs for that period. The district court allowed Arkla to present evidence on remand only as to the damages sustained by plaintiff W. E. Hall for the period 1961 to May 25, 1969.[3]
*1144 After remand, the lower court awarded W. E. Hall $160,507.83 and the remaining plaintiffs a total of $2,738,888.40, which was approximately the amount the trial court reduced on the original trial to compute damages for the 1972-1975 period. Arkla appeals this judgment, contending that the award to the remaining plaintiffs exceeds both the amount paid by Arkla to the United States during the period and the maximum ceiling rates for natural gas allowed by FERC during the period, all in violation of the contract and in violation of the Natural Gas Act (15 U.S.C. § 717a-w). Plaintiffs seek additional damages contending that Arkla’s appeal is frivolous.
The central issue in this appeal involves the sufficiency of the evidence used in comparing the difference in the price provisions of the two contracts, one contract being the gas purchase contract in 1952 containing the favored nation clause, and the other being the lease contract with the United States of America in 1961, payments under which have been construed as activating the favored nation clause of the other contract.
Under the 1961 lease, Arkla paid the government for the value of liquid hydrocarbons extracted from the natural gas and for the dry (residue) gas remaining after the extraction. Under the 1952 gas purchase contract with plaintiffs Arkla purchased “production from all wells . completed as commercially productive of natural gas” subject to the several terms and conditions of the contract. Section 8 of the contract, sub-part D of which contains the most favored nation clause, stipulated the price to be paid for each MCF of gas delivered to Arkla, but recognized that the stipulated price included an additional $.0025 per MCF to compensate the seller for the surrender of rights to receive the value of the LHC extracted by processes after delivery to Arkla. Section 8(B) apparently would allow the seller to extract condensate by a separator at the well before delivery to Arkla. Section 9 gives Arkla the option of purchasing free condensate that may be produced and recovered from the well by. separators and obligates Arkla to pay for such condensate at a “posted” price. This section contains no language relieving Ark-la of its obligation to pay the seller for the free condensate even if the condensate is delivered into Arkla’s gas gathering lines and then later extracted. Some of the provisions of §§ 8 and 9 are reproduced below:
“8. PRICE
“(A)(1) The price to be paid by Buyer for each one thousand cubic feet of gas delivered hereunder to Buyer, on the basis of measurement and calculations hereinafter provided, shall be as follows:
“(a) $0.06997 from the effective date hereof through May 31, 1955;
* * * [graduated to]
“(e) $0.10596 from June 1, 1970, through May 31, 1975;
“(f) $0.11496 during the remainder of the time this agreement shall be in force and effect.
* * * * * *
“(B) The prices . . . paid by Buyer to Seller shall constitute full payment for all gas delivered hereunder and also for all liquifiable hydrocarbons and other products delivered with such gas, it being understood and agreed that any and all products whatsoever recovered or recoverable from the production delivered hereunder by means of any type of processing operation subsequent to delivery shall be the property of Buyer or its assign without any obligation to make further payment to Seller for such products, it being further understood and agreed, however, that nothing herein is intended to deprive Seller of the right to operate a standard type oil field separator at each well subject hereto in order to remove such condensate as may be thereby extracted prior to delivery of production hereunder to Buyer. ’ The parties take cognizance of the fact that the aforesaid prices hereinabove provided to *1145 be paid are $0.0025 per MCF higher than would have been provided had Seller retained the right to participate in the recovery of products by such processing operations subsequent to delivery, and accordingly the aforesaid prices have been calculated and agreed to by the parties with the intention and understanding that payment of the said prices shall constitute payment for all products whatsoever recoverable from the production delivered to Buyer hereunder.
“(C) If in accordance with the provisions of Paragraph (B) of Section 4 of this contract, Buyer dehydrates the gas delivered hereunder, then Seller shall pay to Buyer as a dehydration charge the sum of $0.002 for each one thousand cubic feet of gas dehydrated, which dehydration charge may be deducted by Buyer from remittances due Seller hereunder.
“(D) If at any time during the term of this agreement Buyer should purchase from another party seller gas produced from the subject wells or any other well or wells located in the Sligo Gas Field at a higher price than is provided to be paid for gas delivered under this agreement, then in such event the price to be paid for gas thereafter delivered hereunder shall be increased by an amount equal to the difference between the price provisions hereof and the concurrently effective higher price provisions of such subsequent contract; provided that in determining whether a given price is in fact ‘higher’ than the price provisions of this contract, the inquiry shall not be limited to the actual prices stipulated but due consideration shall also be given to a comparison of all other pertinent provisions of the two contracts, such as point of delivery, basis of measurement, taxes, dehydration, and delivery pressures (provided that the number of years stated as the terms during which the two contracts shall respectively remain in force and effect shall not be a factor to be considered for purposes of comparison under this paragraph) and the price to be thereafter payable in accordance with this paragraph for gas delivered hereunder shall be adjusted accordingly insofar as may be necessary to make allowances for any discrepancies as may exist between such comparable provisions of the two contracts. It is agreed that any such higher price for gas delivered hereunder shall be effective on the first day of Buyer’s accounting month (as elsewhere herein defined) next following the effective date of such subsequent contract, all subject, however, to any rules and regulations of the Office of Price Stabilization or any other regulatory body having jurisdiction.
“9. CONDENSATE. Buyer, or its assign, shall have the option from time to time and upon sixty (60) days’ notice, of purchasing all of the free condensate that may be produced from the subject wells and which may be recovered or recoverable by the use of separators operated in connection with such wells, and measured by liquid meter, or liquid gas ratio tests as hereinafter set forth, and shall accept delivery of such condensate into the gas gathering lines or at Seller’s option from Seller’s storage tanks located on the leases. Buyer, or its said assign, shall deliver to Seller written notice of the exercise of its said option and may discontinue the purchase of condensate by giving Seller sixty (60) days’ written notice that it no longer desires to purchase same.
‡ ‡ $ * 9fC *
“Buyer shall pay or cause to be paid to Seller, for condensate received in accordance with the provisions of this Section, the price posted by Buyer or its said assign, as the case may be. Provided, however, that such posted price shall be in line with the prices established by the majority of major oil companies for similar grade condensate in fields in North Louisiana.” Emphasis by the Court.
Arkla insists that the FERC ceiling on gas, whether wet (before extraction of LHC [liquid hydrocarbons]) or dry (after extraction of LHC) is the sole basis upon which damages should have been assessed and that the price it pays or paid to the United States for the extracted LHC is not a factor to be considered. Arkla argues that consid *1146 eration of the price it pays or paid to the United States for LHC ignores and is in the face of the express language of plaintiffs’ 1952 gas purchase contract that plaintiffs sold to Arkla only wet gas. The crux of this case is not that plaintiffs sold wet gas, but consideration of the purpose of the favored nation clause, the fact that a portion of the stipulated MCF price for gas under the 1952 contract (Vi cent) was for LHC, and the decisions of state and federal authorities in this controversy that the price Arkla paid the United States for LHC is a “pertinent factor” to be used under section 8 of the 1952 contract in interpreting the favored nation clause and in determining the difference in the price provisions of the two contracts. The price provisions can be and have been compared.
Again we determine that for the purpose of giving effect to the favored nation clause — section 8 of the contract, the higher price the United States began to receive from Arkla in 1961 for gas and for LHC is the basis upon which to assess and measure the amounts plaintiffs should have begun to receive monthly from Arkla in 1961 for its gas and LHC. Arkla conditionally concedes as much in its first reply brief:
“The values paid by Arkla to the United States for extracted plant products can and must be considered under this Court’s May 1, 1978, judgment [359 So.2d 255 (La.App.2d Cir.)] as a pertinent factor to determine the overall price paid to the government on a per Mcf basis. The Court has held that it is a pertinent factor and Arkla cannot attack that holding on this appeal. However, when the Court made that decision, the effect of the application of that pertinent factor on the Plaintiffs’ monetary recovery was left to the Trial Court on remand. The Trial Court has considered the issues on remand and has rendered an award in its May 17, 1979, judgment, that is again grossly in error. This time, the [trial] Court failed to consider the limitations placed upon the award by the Natural Gas Act. The Plaintiffs award should be limited [to a total of $1,609,067.11] . . ”
We cannot agree that the trial court erred.
We reiterate that the purpose of the favored nation or price adjustment clause is to protect the seller under a long-term contract from price discrimination. A contract with favored nations provisions should be interpreted broadly, and not restrictively, to fully effect the provisions. 359 So.2d at p. 262. See also Eastern Petroleum Company v. Kerr-McGee Corporation, 447 F.2d 569 (C.A. 7th, 1971). Arkla paid the United States for gas and for LHC. Arkla paid plaintiffs for gas and LHC. Section 8(D) of plaintiffs’ contract states that “ . . . in determining whether [the price paid the United States for “gas”] is in fact ‘higher’ than the price provisions of [plaintiffs’] contract, the inquiry shall not be limited to the actual prices stipulated [for “gas”], but due consideration shall also be given to a comparison of all other pertinent provisions of the two contracts such as
point of delivery, basis of measurement, taxes, dehydration, and delivery pressure .
and the price to be thereafter payable [to plaintiffs] shall be adjusted accordingly insofar as may be necessary to make allowances for any discrepancies as may exist between such comparable provisions of the two contracts . . . subject to any rules and regulations of . . any . regulatory body having jurisdiction.”
We have again reviewed in the original record, summaries and the testimony of the plaintiff-expert at whose direction they were prepared. We do not depart from our 1978 observation.[4] We remanded in 1978, *1147 not because we thought that this evidence was deficient or suspect or that plaintiffs’ recovery should be limited by the amount that Arkla paid the United States for its dry gas after LHC extraction. In the 1952 contract, gas includes LHC and the price provisions of the contract provide a price for both.
The lower court originally used the data summaries and testimony relating to the comparison of pertinent factors for the entire period (1961-1975) to determine damages for the 1972-1975 limited period that the lower court and we thought damages were owed.[5] The lower court proportionately reduced the damages for the 1961-1975 period ($2,800,000) by 68 percent to determine the damages for the 1972-1975 period ($900,000). We remanded because neither party had pursued the lower court’s suggestion for expert assistance and had not provided the lower court with means to accurately reduce or extract the 1961 — 1975 data to facilitate determination of the damages for the 1972 — 1975 period. We were then, as we are now, satisfied that plaintiffs are entitled to have the favored nation clause interpreted to allow them an escalation of the amounts Arkla paid plaintiffs for gas (whether wet or dry) and for any extracted LHC (originally Vi cent per MCF) determined by the price Arkla paid the United States for its gas (albeit dry) and for the extracted LHC. The Supreme Court of Louisiana agreed and FERC so understood.
“The Louisiana courts found that the contract provided for a price for the [LHC] products removed from the gas severable from the price for the gas sold under the contract. The damages awarded for the actual natural gas, not including the sev-erable payment for the products removed, was within the area ceiling rate.” Footnote 19, FERC, May 18, 1979, cited supra in Footnote 5.
Section 8 of the 1952 contract, pertinent parts of which have been quoted, effectively states that the price Arkla pays for each MCF of gas includes Vi cent for [LHC and] other products which may be *1148 recoverable from the gas. On the basic contract question (to use terminology frequently used by FERC) the effect of the lower court’s finding, which we again approve, is that the contract shall be interpreted to entitle these plaintiffs to damages measured by what Arkla paid the United States for its gas and for LHC products severed from its gas. In effect Arkla paid the government and the plaintiffs for wet gas. The eventual price was determined by the MCF after extraction of LHC and by the price for the LHC. The price plaintiffs received for its gas after extraction of LHC and for the LHC was less than what the government received.
The 1952 contract provides that, once the favored nation clause is activated, the increase plaintiffs shall receive • shall be “ . . .an amount equal to the difference between the price provisions [of the 1952 contract] and the . . . higher price provisions of [the 1961 contract with the United States] . . . ” The price provisions of plaintiffs’ contract and of the United States’ contract have been compared and the difference has been determined. Plaintiffs should receive for their gas and for the LHC in the gas the higher amount the United States was receiving for its gas and the LHC in the gas. Gas in the 1952 contract includes the LHC. Each contract contains price provisions for gas and for LHC. When the price provisions of the two contracts, comparing the pertinent factors, are considered, plaintiffs are entitled to the damages assessed.
Plaintiffs are not entitled to damages for frivolous appeal. At Arkla’s cost, judgment is AFFIRMED.

. 359 So.2d 255 (La.App.2d Cir. 1978).

. 368 So.2d 984 (La.1979).

. As we noted in the original appeal, Arkla was in a superior position to compile and present evidence of the difference in price paid to plaintiffs and to the favored nation (the United States) during the period and to compare the pertinent factors upon which the difference in price could be determined. We also noted that neither the plaintiffs nor Arkla pursued the lower court’s suggestion that perhaps an expert should be appointed to assist in determining *1144 the damages. Again we mention that the pleadings and testimony fill 26 volumes of almost 5,000 pages and that the record includes almost 500 exhibits, some of which are voluminous.

. In our 1978' opinion we observed that the plaintiff-expert
“ . . , gathered all of the pertinent data necessary to calculate damages . . . for the entire period . . . 1961 through 1975. Based on the data obtained . schedules [were prepared] to reflect a comparison in the price . . . paid . plaintiffs with that paid to the United States . . . during this fourteen- *1147 year-period . [and] which related the differential in the price of gas to the volumes sold by plaintiffs to defendant for the period. Built into these summaries are the adjusting factors . considered necessary to render the prices comparable. These summaries were . . . extended to calculate interest on the sums claimed during the period.” 359 So.2d at p. 264.

. We note that the FPC-FERC agreed with the original determination by the lower court and by this Court that damages were due for the limited period 1972-1975:
♦ ífc S(! * * *
“Prior to 1972 the Hall group did not hold small producer certificates. In the ‘Order Denying Application for Rehearing’ issued June 5, 1976, the FPC stated on p. 2, n. 1: ‘Prior to the filing of their small producer application, respondents, of course, as ARK-LA contends, would be entitled under the Natural Gas Act only to the rate on file with this Commission and in effect. See Samedan Oil Corp., et al., 37 FPC 207, and cases cited therein.’
“The FPC held that the producers were not entitled to a rate increase for the period prior to when they held small producer certificates since they had not filed for a rate increase as required by Commission regulation. The Louisiana Supreme Court, however, has awarded damages back to 1961. It concluded that it was Arkla’s fault that the Hall group has not filed for a rate increase prior to 1972. The Louisiana court therefore deemed that the Hall group had fullfilled its obligation to file new rate schedules. On this basis the Louisiana Supreme Court awarded damages for the 1961 to 1972 period after the favored nation clause was found to have been triggered and before the Hall group received small producer certificates.
“It is our opinion that the Louisiana Supreme Court’s award of damages for the 1961-1972 period violates the filed rate doctrine. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 349 [341] U.S. 246, 251 [71 S.Ct. 692, 95 L.Ed. 912] (1951). This Commission, however, does not have the power to review what the state court has done. We note, however, that a petition for a writ of certiorari has been filed in the Supreme Court of the United States seeking review of the Louisiana Supreme Court’s decision. Arkla v. Hall, Sup.Ct. No. 78-986, filed December 18, 1978.” Arkansas Louisiana Gas Company v. Frank F. Hall, et al, Docket No. RI-76-28, Order Declining Jurisdiction After Reconsideration of the Issue on Remand, issued May 18, 1979, footnote 18. See also footnote 20.
The U. S. Supreme Court denied certiorari on October 1, 1979.