PAYPHONE CONNECTION PLUS, INC.

VERSUS

WAGNERS CHEF, LLC

\* NO. 2019-CA-0181

\*

\* COURT OF APPEAL

\*

\* FOURTH CIRCUIT

\*

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-02580, DIVISION "E-16"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Daniel L. Dysart**
\* \* \* \* \* \*

(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Tiffany G. Chase)

Christopher J. Davidson
John A. E. Davidson
DAVIDSON & DAVIDSON, APLC
2901 Independence Street, Suite 201
Metairie, LA 70006
        COUNSEL FOR PLAINTIFF/APPELLEE

Jimmy A. Castex, Jr.
CASTEX ESNARD, L.L.C.
829 Baronne Street
New Orleans, LA 70113
        COUNSEL FOR DEFENDANT/APPELLANT

**VACATED AND REMANDED**

**JULY 31, 2019**

This appeal is taken from a trial court judgment confirming a default judgment in favor of plaintiff-appellee, Payphone Connection Plus, Inc. ("Payphone"), and against the defendants, Jadallah Saed and Shadia Hamideh. After reviewing the record and applicable law, we find that Payphone failed to sustain its burden of proof for confirmation of the default judgment. Accordingly, we vacate the trial court judgment and remand this matter for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

On March 20, 2015, Payphone filed a Petition against Wagners Chef, LLC ("Wagners") for an alleged breach of contract.[1] According to the Petition, Payphone entered into a fifteen-year contract, a "Placement Agreement," with Wagners on November 18, 2013, which gave Payphone the exclusive right to install and operate an automated teller machine ("ATM") on the property located at

---

[1] Wagners also conducts business as "Louisa Express."

4301 Louisa Street in New Orleans.[2]  Payphone then installed an ATM at the site,

although the installation date is not specified.

The Petition alleges that Wagners breached the contract in June or July,

2014, by installing another ATM at the Louisa Street location.  Wagners is alleged

to have further breached the contract in October, 2014 by unplugging Payphone's

ATM machine. Payphone sought the removal of the unauthorized ATM machine

by letter to Wagners dated October 8, 2014; however, Wagners neither removed

the ATM machine nor reconnected Payphone's ATM machine.  As a result,

Payphone allegedly lost revenues.[3]

Service of the Petition was made on Wagners, though its registered agent,

Jadallah Saed, on April 8, 2015.

On May 19, 2015, Payphone filed a Motion for Preliminary Default which

was granted the same day.  Payphone then moved to set a trial to confirm the

preliminary default on July 21, 2015; in response, the trial court set a trial for

August 26, 2015.  Before the trial occurred, however, Wagners appeared in the

case and filed an Answer on August 4, 2015.

---

[2] The Placement agreement lists Payphone as "Payphone/ATM Connection Plus (ATMs)," a different name than the plaintiff in this action.  We assume that they are the same entity, as no exception as to the capacity of Payphone has been raised.

[3] The Petition also alleges that Payphone entered into a fifteen-year Placement Agreement with Louisa Express on November 18, 2013 providing Payphone with the exclusive right to install and operate an ATM at Louisa Express, a convenience store located at 4301 Louisa Street in New Orleans. The Petition then recites the same allegations against Louisa Express as those made against Wagners.  Attached to the Petition are copies of the two Placement Agreements dated November 13, 2014.  They are identical with the exception that one is between "Payphone/ATM Connection Plus (ATMs)" and "Wagner Chef," while the other is between "Payphone/ATM Connection Plus (ATMs)" and "Wagner Chef, LLC dba Louisa Express."  The record does not reflect the reason for two identical contracts for the same location; it is clear, though, that only one location with one ATM is at issue.

In this opinion, we sometimes refer to the Placement Agreements as "the contracts."

Wagners then moved, on October 31, 2016, for leave of court to file a Reconventional Demand (against Payphone) and a Third Party Demand (against Nidal Jaber, who is alleged to be the owner of 33.33% of Wagners' units; and Suzanne Wimsatt, who is alleged to be Payphone's president and owner). While the trial court set a hearing on Wagners' motion for leave to file the reconventional demand and third party demand for January 20, 2017, the record does not reflect a ruling on that motion.

Ten months later, on August 28, 2017, Payphone filed a First Supplemental and Amended Petition.[4] This amended petition added Jadallah Saed and Shadia Hamideh as defendants and amended the original petition by alleging that (1) an affidavit of dissolution was filed with the Louisiana Secretary of State, dissolving Wagners and because of this, Wagners is "no longer a juridical person or entity . . . [and] all the assets and liabilities of the company flow to its members individually"; and (2) Mr. Saed and Ms. Hamideh are married, and the assets of Payphone are community property.

The record reflects attempts to serve the amended petition on Mr. Saed and Ms. Shadia over the course of five days in September; those efforts were unsuccessful. Thereafter, in response to a Motion to Appoint Private Process Server, Crescent City Legal Process was appointed "process server of the First Supplemental and Amended Petition" on September 26, 2017. On October 10,

---

[4] The First Supplemental and Amended Petition was filed without first obtaining leave as required by La. C.C.P. art. 1151, which provides, in pertinent part, that a "plaintiff may amend his petition without leave of court at any time before the answer thereto is served . . . . Otherwise, the petition . . . may be amended only by leave of court or by written consent of the adverse party."

2017, a person identified only as Tanya Craft filed an affidavit into the record stating that she personally served the First Supplemental and Amended Petition on Mr. Saed and Ms. Hamideh on October 1, 2017.[5]

Payphone then moved for another preliminary default on October 30, 2017, which was granted on October 31, 2017. After a June 8, 2018 hearing to confirm the preliminary default, the trial court entered a "Final Judgment" on the same date against Mr. Saed and Ms. Hamideh in the amount of "Three Hundred Thousand One Hundred Four Hundred Eighty-Two and 50/100 dollars," along with attorney's fees of $8,222.55, legal interest from the date of judicial demand and all costs of the proceedings.[6]

On August 10, 2018, Mr. Saed and Ms. Hamideh filed a motion to annul the June 8, 2018 judgment on several bases.[7] The motion was set for a hearing which was continued twice and the current record does not reflect a ruling on the Motion. Mr. Saed and Ms. Hamideh filed the instant appeal of the June 8, 2018 judgment on August 13, 2018.[8]

In their appeal, Mr. Saed and Ms. Hamideh have raised three assignments of error. Because we find merit to their second assignment of error which requires

---

[5] The Affidavit makes no mention of the service of the original petition.
[6] The trial court judgment is clearly ambiguous.
[7] Mr. Saed and Ms. Hamideh filed a Petition to Annul Judgment was filed at the same time, out of an abundance of caution.
[8] This Court has jurisdiction of this appeal despite the pending motion/petition to annul judgment, as La. C.C.P. art. 2005 provides, in pertinent part, that "[a] judgment may be annulled prior to or pending an appeal therefrom, or after the delays for appealing have elapsed."

the reversal of the trial court's judgment, we address that issue, alone, and pretermit a discussion of the remaining issues.[9]

### *Evidence/testimony at June 8, 2018 hearing*

At the hearing to confirm the default judgment, the only testimony was that adduced from Ms. Wimsatt, Payphone's owner/operator. Ms. Wimsatt identified the two Placement Agreements and indicated that, to her knowledge, they "are both signed . . . by persons authorized to sign these agreements." Ms. Wimsatt then testified that the agreements gave Payphone the right to exclusive use of ATMs at the location identified in the Agreements. According to Ms. Wimsatt, the Agreements allowed for damages for anticipated revenue in case of a breach and in this case, she prepared a calculation of anticipated revenue, offered into evidence, which amounted to $296,039.05. She was not questioned about and gave no explanation as to how she arrived at this figure.

Ms. Wimsatt then testified that the Payphone's ATM machine, which had been bolted to the floor of the store, was no longer on the premises and that she did not know what had become of it. She was never notified that Payphone was in breach of the Agreements. She indicated that the cost to replace the ATM machine, and its accessories, was $5,543.

Ms. Wimsatt was then questioned about Wagners' status as evidenced by the following colloquy:

---

[9] The assignments of error have been listed as follows: (1) "The district court erred in granting the default judgment because plaintiff did not establish service of the original petition on Saed and Hamideh"; (2) "The district court erred in granting the default judgment because plaintiff did not establish a *prima facie* case for judgment against Saed and Hamideh"; and (3) "The district court erred in granting the default judgment because allegations upon which the default judgment were predicated had been previously denied by Wagners Chef in its answer to the original petition."

> Q Now, after the suit was filed, and we do have a copy of it, did Wagners Chef go into voluntary dissolution?
>
> A Yes, sometime after the suit.
>
> Q And that's attached as Exhibit 3, is it not?
>
> A Yes. [10]

Exhibit 3 appears to be a document from the Secretary of the State of Louisiana with an "Affidavit to Dissolve Limited Liability Company" indicating that "Wagners Chef, LLC is no longer doing business, owes no debts and owns no immovable property" and "is dissolved by filing this affidavit with the Secretary of State, executed by the member(s), or organizer(s) if no membership interests have been issued, attesting to such facts." The "member" of Wagners is listed as Mr. Saed.

Ms. Wimsatt was next questioned about Mr. Saed's marital status and testified that "throughout the entire time," he was married to "co-defendant," Ms. Hamideh.

At the conclusion of the trial, Ms. Wimsatt indicated that she was seeking judgment in the amount of Payphone's lost profits, the value of the ATM machine, attorney's fees and costs.

### *Standard of Review*

The standard of review of the confirmation of a default judgment "'is restricted solely to determining whether the record contains sufficient evidence to support a prima facie case.'" *Parker v. Schneider,* 14-0232, p. 2 (La. App. 4 Cir. 10/1/14), 151 So.3d 679, 681 (quoting *McIntyre v. Sussman*, 10-1281, p. 5 (La.

---

[10] Exhibit 3 is marked as "Evidence of Dissolution," while Exhibits 1 and 2 are marked as the two Placement Agreements. The only other exhibit, Exhibit 4, is marked as "Calculation of Lost Revenue."

6

App. 4 Cir. 10/26/11), 76 So.3d 1257, 1261). "This determination is a factual one governed by the manifest error standard of review." *Id.*, p. 3, 151 So.3d at 681 (quoting *Arias v. Stolthaven New Orleans, LLC*, 08-1111, p. 5 (La.5/5/09), 9 So.3d 815, 818). Thus, we review this matter to determine whether the trial court's "finding of fact . . . is clearly wrong in light of the record reviewed in its entirety." *Hamilton v. Burns*, 2016-0107, p. 4 (La. App. 4 Cir. 9/28/16), 202 So.3d 1177, 1180 (quoting *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98).

### *Default Judgments*

Louisiana Code of Civil Procedure Article 1701 governs default judgments and provides, in pertinent part, that, when "a defendant in the principal or incidental demand fails to answer or file other pleadings within the time prescribed by law or by the court, a preliminary default may be entered against him." La. C.C.P. art. 1701 A. Thereafter, a preliminary default is to be confirmed only "by proof of the demand that is sufficient to establish a prima facie case and that is admitted on the record prior to the entry of a final default judgment." La. C.C.P. art. 1702 A.

The Louisiana Supreme Court reiterated the legal basis for obtaining a default judgment in *Arias v. Stolthaven New Orleans, L.L.C.*, 08-1111, p. 7 (La. 5/5/09), 9 So.3d 815, 820 (footnote omitted):

> Confirmation of a default judgment is similar to a trial and requires, with admissible evidence, "proof of the demand sufficient to establish a prima facie case." La. C.C.P. art. 1702(A); *Power Marketing Direct[, Inc. v. Foster*, 05-2023, p. 10 (La.9/6/06), 938 So.2d 662, 670]; [Frank L. Maraist, *Louisiana Civil Law Treatise: Civil Procedure* § 12.3, at 452-53 (2d ed.2008)]. The elements of a prima facie case are established with competent evidence, as fully as though each of the allegations in the

7

petition were denied by the defendant. *Sessions & Fishman v. Liquid Air Corp.*, 616 So.2d 1254, 1258 (La. 1993); *Thibodeaux v. Burton*, 538 So.2d 1001, 1004 (La. 1989). In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at trial on the merits. *Thibodeaux*, 538 So.2d at 1004. A plaintiff seeking to confirm a default must prove both the existence and the validity of his claim. A default judgment cannot be different in kind from what is demanded in the petition and the amount of damages must be proven to be properly due. La. C.C.P. art. 1703.

After reviewing the record in its entirety, we find that testimony and evidence offered at the hearing to confirm the default judgment was woefully inadequate to establish a prima facie case against Mr. Saed and Ms. Hamideh. As the *Arias* Court made clear, at the confirmation of a default judgment, "the rules of evidence generally apply." *Id.*, pp. 7-8, 9 So.3d at 820. That is,:

> [t]he plaintiff must follow the rules of evidence even though there is no opponent. "Because at a default confirmation there is no objecting party, to prevent reversal on appeal, both plaintiff and the trial judge should be vigilant to assure that the judgment rests on admissible evidence" that establishes a prima facie case. George W. Pugh, Robert Force, Gerald A. Rault, Jr., & Kerry Triche, *Handbook on Louisiana Evidence Law 677* (2007). Thus, inadmissible evidence, except as specifically provided by law, may not support a default judgment even though it was not objected to because the defendant was not present. 19 Frank L. Maraist, *Civil Law Treatise: Evidence and Proof* § 1.1, at 5 (2d ed.2007).

*Id.*, p. 8, 9 So.3d at 820.

**DISCUSSION**

The "elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages." *1100 S. Jefferson Davis Parkway, LLC v. Williams*, 14-1326, p. 5 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1216, *writ denied*, 15-1449 (La. 10/9/15), 178 So.3d 1005. It is well-settled

that "[t]he party claiming the rights under the contract bears the burden of proof." *Id*.

As concerns the first element of a breach of contract case, even assuming that the Placement Agreements are valid contracts and were authenticated by Ms. Wimsatt, when she identified them at the hearing as the "placement agreements [she] made at the location of the defendants,"[11] a review of these documents indicate that the parties to the agreements are Payphone and Wagners/Wagners "dba Louisa Express." The person listed as the signatory for Wagners is Nidal Jaber, who, while identified in the third party demand, is not a party to this action (as there is no indication that the third party demand was entered into the record) and has never been made a direct defendant in this action. Neither Mr. Saed nor Ms. Hamideh is a signatory to the contracts.

While in her testimony Ms. Wimsatt agreed that the "agreements are both signed, to [her] knowledge, by persons authorized to sign" them and that they were signed by the "management members," there is nothing in the record demonstrating that the fact of Mr. Jaber's authority to sign the contracts is within Ms. Wimsatt's knowledge.[12] Moreover, in Wagners' Answer filed into the record, Wagners directly and specifically "dispute[d] the validity and enforceability of

---

[11] Notably, Ms. Wimsatt was not asked anything further about the contracts themselves or whether she signed them; for purposes of this opinion, we assume that the signatures on the contracts are hers.

[12] Payphone argues in its brief that "[t]he defendants attempt to attack Ms. Wimsatt as lacking any personal knowledge to testify. However, this objection is improperly made for the first time on appeal," citing *Hall v. Folger Coffee Co*., 02-0920 (La. App. 4 Cir. 10/1/03); 857 So.2d 1234, *writ denied*, 03-1756 (La. 10/17/03); 855 So2d 762, and *writ denied*, 03-3416 (La. 6/25/04), 876 So.3d 827. This argument is without merit. As the Supreme Court noted, "inadmissible evidence, except as specifically provided by law, may not support a default judgment even though it was not objected to because the defendant was not present." *Arias*, 08-1111, p. 8, 9 So.3d at 820.

the" contracts.[13]   Ms. Wimsatt's testimony in no way establishes that the contracts are valid and enforceable and that issue was not resolved at the default confirmation hearing.

More importantly, there was no documentary evidence or testimony introduced at the hearing which connected Mr. Saed and Ms. Hamideh to the contracts, or for that matter, to Wagners, other than the documents concerning the dissolution of Wagners.  Those documents, too, only identify Mr. Saed as a "member" or "organizer" of Wagners.  They, alone, do not support Payphone's contention that Mr. Saed or Ms. Hamideh is liable for Wagners' debts.

Simply put, Payphone failed to allege a single basis of liability against Mr. Saed and Ms. Hamideh, personally.  As we previously noted, the amended petition only alleges that "at all times herein," Mr. Saed and Ms. Hamideh were married and that the "assets of Wagners Chef are community property." Neither is alleged to have an ownership interest in Wagners, and there are no allegations consistent with an attempt by Payphone to "pierce the corporate veil."[14]  Notably, in a default confirmation hearing, a "plaintiff is confined to the facts and the theories pled in

_____

[13]We note that, although Wagners made an appearance in this case by filing an Answer, the record does not reflect that it was provided with any notice of the hearing on the default judgment.  Payphone's contention that, "[t]he dissolution of a limited liability company vests all obligations of the entity on its members for any debt or claim," that this lawsuit is such a "claim," and therefore, Mr. Saed and Ms. Hamideh "stepped into the shoes of the company accepting all responsibility for the claim" does not absolve it of its duty under La. C.C.P. art. 1312 to serve all parties.  Article 1312 expressly provides, in pertinent part that, "[e]xcept as otherwise provided in the second paragraph hereof, every pleading subsequent to the original petition shall be served on the adverse party as provided by Article 1313 or 1314, whichever is applicable."

[14] As the Louisiana Supreme Court explained, "as a general proposition, the law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons. See La. C.C. art. 24.  However, in narrowly defined circumstances, when individual member(s) of a juridical entity such as an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable. When individual member(s) are held liable under such circumstances, it is said that the court is 'piercing the corporate veil.'"  *Ogea v. Merritt*, 13-1085, p. 6 (La. 12/10/13), 130 So.3d 888, 894-95 (footnote omitted).

10

his petition." *Hall*, 02-0920, p. 12, 857 So.2d at 1244. Here, there is a complete absence of facts or theories to support a default judgment against Mr. Saed and Ms. Hamideh, and an absence of any evidence by which Mr. Saed and Ms. Hamideh could be liable for a breach of the contracts at issue.

Our finding is consistent with our jurisprudence on this issue. In *Mossy Motors, Inc. v. Cameras Am.*, 02-1536, p. 1 (La. App. 4 Cir. 6/25/03), 851 So.2d 336, 338, for example, suit was brought against a camera surveillance company and two individuals, each identified as "a principal and/or agent and/or officer" of the company. A default judgment was entered against the company and the two individuals for damages alleged to have occurred as a result of their failure to properly monitor the plaintiff's premises, which allowed an unlawful entry onto the premises by persons who damaged vehicles and a fence. The Court first noted that "[t]he allegations against the LLC on the face of the plaintiff's petition create a presumption against the individual liability of the individual defendants." *Id*., p. 2, 851 So.2d at 338. Noting that the plaintiff "failed to allege or offer any proof to support a finding of individual liability separate from that of the LLC," the Court found that it, therefore, failed to overcome the burden imposed on it to overcome this presumption. *Id*.

Like the instant case, in *Mossy Motors*,

> [t]he plaintiff offered no proof of any agreement between itself and the individual defendants. The plaintiff offered no proof of any duty owed by the individual defendants to the plaintiff. There is nothing in the record to support the decision of the trial court to cast the individual defendants in judgment along with the LLC.

*Id*., p. 3, 851 So.2d at 339.

Similarly, in *Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Temlaco, Inc.*, 39,459 (La. App. 2 Cir. 4/28/05), 903 So.2d 492, a default judgment was entered against a company and an officer/registered agent of the company in which it was alleged that the company had failed to pay workers' compensation insurance premiums and other assessments in 2004. The suit contained allegations against the officer far more detailed than those in the instant case; it was alleged that the company's "corporate charter had been revoked, that its assets had been distributed to the shareholders and its corporate structure had been ignored, such that [the officer] was personally liable for [the company's] debts." *Id.*, p. 1, 903 So.2d at 494. In reversing a default judgment against the officer, the Second Circuit noted that, in order "[t]o impose liability on a corporate officer or shareholder, the plaintiff must also establish a prima facie case of individual liability separate from that of the corporate defendant." *Id.*, p. 4, 903 So.2d at 495.

The Court then found that "[t]he plaintiff did not offer proof of any agreement between itself and [the officer] as an individual, or provide proof of any duty owed by [the officer] individually to plaintiff." *Id.*, p. 4, 903 So.2d at 495. *See also Wagenvoord Broad. Co. v. Blanchard*, 255 So. 2d 635, 636 (La. App. 4th Cir. 1971)(in a breach of contract suit, the trial court erred in granting a default judgment against a defendant because the evidence supporting it was insufficient: "[t]here [was] is no reference to him in the contract or in any documentary evidence presented. He did not sign the contract" and "the only evidence which could possibly be construed to hold [him] liable . . . [was] the testimony of general manager that he thought [he was one of] '. . . two apparent principals from the company.'").

Based on the foregoing, we find that Payphone failed to establish a prima facie case of a breach of contract by Mr. Saed and Ms. Hamideh.

Furthermore, a review of the record also demonstrates that Payphone also failed to prove its damages. "The party bringing suit has the burden of proving any damage suffered by it as a result of a breach of contract." *L & A Contracting Co. v. Ram Indus. Coatings, Inc.*, 99-0354, p. 20 (La. App. 1 Cir. 6/23/00), 762 So.2d 1223, 1235. In a breach of contract case:

> Actual damages arising from a breach of contract must be proven; they cannot be merely speculative or conjectural. . . . It must appear *reasonably certain* that the amount of damages rest upon a certain basis. . . . The sufficiency of proof of damages must be determined in relation to the particular contract at issue and the circumstances surrounding its breach. The question of the certainty of proof of damages becomes a matter for decision in each individual case. . . .

*LeBlanc v. Gibbens Pools, Inc.*, 447 So.2d 1195, 1197 (La. App. 5th Cir. 1984), quoting *Hall v. Arkansas-Louisiana Gas Co.*, 368 So.2d 984, 991 (La.1979)(emphasis supplied).

Moreover, "a minimal degree of detail or specificity is required in fixing damages." *Id. See also* S*afeguard Storage Properties, L.L.C. v. Donahue Favret Contractors, Inc.*, 10-0673, p. 14 (La. App. 4 Cir. 3/31/11), 60 So.3d 110, 120, quoting *Wasco, Inc. v. Econ. Dev. Unit, Inc.*, 461 So.2d 1055, 1057 (La. App. 4th Cir. 1984)("Although the absence of independent corroborative evidence is not always fatal, the lack of even a minimal degree of detail and specificity in the plaintiff's testimony, regarding the issue of lost profits, would preclude recovery of this item of damages.").

In the instant matter, Ms. Wimsatt was asked whether she prepared a "calculation of the anticipated revenue" resulting from the alleged breach of

contract. She replied in the affirmative, and indicated that the anticipated amount was "[$]296,389.05," the amount of lost profits for which she sought judgment. Payphone's counsel offered Exhibit 4 into the record, a document identified as "Calculation of Lost Revenue."

Ms. Wimsatt was asked no specific questions regarding Exhibit 4. No explanation as to how she arrived at the sum was given, and she gave no "degree of detail and specificity" as to the issue of lost profits. This certainly falls well below the "minimal degree" required to support a lost profit claim. On this basis, too, Payphone failed to establish a prima facie case.

Accordingly, we find that, based on the record before us, the trial court manifestly erred in confirming the default judgment against Mr. Saed and Ms. Hamideh.

## CONCLUSION

For the reasons set forth more fully herein, we vacate the trial court's judgment and remand this matter for further proceedings.

**VACATED AND REMANDED**